**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-23663

BRILL MARITIME, INC. d/b/a EXPORT
YACHT SALES, on behalf of itself and all
others similarly situated,

        Plaintiff,

    vs.

BOATS GROUP, LLC,

        Defendant.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

---

## CLASS ACTION COMPLAINT

Plaintiff Brill Maritime, Inc. d/b/a Export Yacht Sales ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to the facts pertaining to itself, and upon information and belief as to all other matters, brings this action against Boats Group, LLC ("Boats Group"), and complains and alleges as follows:

### I.      NATURE OF THE ACTION

1.      This is an action for injunctive relief and damages for antitrust violations pursuant to the Sherman Act, 15 U.S.C. § 2 and the Florida Antitrust Act of 1980, Sections 542.19, and 542.23, Florida Statutes, and for unfair methods of competition under the Florida Deceptive and Unfair Trade Practices Act, 501.201, *et. seq.* Specifically, Plaintiff seeks to restrain and remedy Boats Group's unlawful monopolization and/or attempted monopolization of the U.S. boat listing and marketing services market.

2.      Boats Group owns and operates the three largest online platforms that connect buyers and sellers of recreational boats in the U.S.: Boat Trader, YachtWorld, and boats.com. These

platforms are used by boat brokerages and dealers to advertise and sell recreational vessels to consumers. Through subscription-based packages, sellers pay Boats Group to have their inventory listed and marketed to a broad audience of prospective buyers.

3.      Plaintiff is a Miami-based boat brokerage that purchases these subscriptions from Boats Group to market its inventory to potential buyers. Boats Group has willfully acquired, maintained and expanded monopoly power in this market by engaging in exclusionary and anticompetitive conduct, including the serial acquisitions of its main competitors, unilateral price increases, restrictive contractual terms, and practices that hinder entry and expansion by rival platforms. As a result, sellers face supracompetitive outreach costs, competitors are foreclosed from competing on the merits, and consumers encounter reduced choice and higher prices in the recreational boating marketplace.

4.      Plaintiff has been directly harmed by Boats Group's conduct. Plaintiff has been forced to pay supracompetitive prices for essential marketing services, with effectively zero viable alternatives available. Boats Group's exclusionary behavior has suppressed competition, harmed sellers and brokerages, and distorted the structure and dynamics of the online boat sales marketplace. Plaintiff brings this action, individually and on behalf of all others similarly situated, to enjoin Boats Group's unlawful conduct, restore competitive conditions in the relevant market, and recover treble damages for the injuries it has suffered, including overcharges, restricted choice, and artificially constrained market conditions that directly impacted Plaintiff and members of the Classes as subscribers and users of Boats Group's services.

## II.      THE PARTIES

5.      Plaintiff is a boat brokerage firm headquartered in Miami, Florida. Plaintiff is engaged in the business of marketing and selling recreational marine vessels and relies heavily on

digital platforms to advertise its inventory to prospective buyers. Plaintiff has purchased subscription-based marketing services from Boats Group and has been directly harmed by Boats Group's anticompetitive conduct, as set forth below.

6.     Defendant, Boats Group, is a limited liability company headquartered at 1221 Brickell Avenue, Suite 2300, Miami, Florida 33131. Boats Group owns and operates several of the most widely used online platforms for boat and yacht listings, including Boat Trader, YachtWorld, and boats.com, which formerly competed with one another in the market for online marine vessel listing and marketing services. These platforms serve as critical advertising and lead-generation tools for boat brokerages, dealers, and other sellers throughout the U.S.

## III.     JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, because this action arises under the antitrust laws of the United States, including, specifically, Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims in this action in that they form part of the same case or controversy under Article III of the Constitution. The state law claims arise from the same nucleus of operative facts and involve overlapping factual and legal issues.

9.     Venue is proper in this District under Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26, and 28 U.S.C. § 1391, because Defendant is headquartered in this District, is licensed to do business, transact business, or have committed acts in furtherance of the alleged

conduct in this District; and because a substantial part of the events giving rise to the claims in this action occurred in this District.

10.     This Court has personal jurisdiction over the Defendant because, *inter alia*, Defendant: (a) conducted substantial business in the U.S. and in this District, directly or through subsidiaries, agents, or affiliates; (b) Defendant purposefully directed its business activities at this forum, including marketing, selling, and providing online boat listing services to brokerages and consumers located in this District; (c) the unlawful conduct alleged herein was foreseeable and intended to have anticompetitive effects in this District; and (d) the claims in this action arise out of and relate to Defendant's contacts with the United States and with this forum.

11.     Personal jurisdiction is also proper under Rule 4(k) of the Federal Rules of Civil Procedure and 15 U.S.C. § 22, which authorize service of process and the exercise of personal jurisdiction in antitrust cases in any district where a Defendant resides, is found, has an agent, or transacts business.

## IV.     FACTUAL ALLEGATIONS

### A.  The Relevant Market

12.     *Geographic Market.* The relevant geographic market is the United States. Boats Group's platforms are marketed, operated, and used by sellers and buyers nationwide. Plaintiff and other brokerage firms rely on access to buyers throughout the U.S., and Boats Group's conduct affects competition on a national scale.

13.     *Product Market.* The relevant product market in this action is the market for online marine vessel listing and marketing services. This market comprises digital platforms that facilitate the professional listing, promotion, and sale of recreational boats and yachts, primarily serving licensed brokers and dealers. These platforms provide a suit of specialized tools, including marine-

specific inventory management systems, integration with multiple listing services (MLS), customized sales presentation tools, contract drafting capabilities, and buyer analytics. These services are not reasonably interchangeable with general-purpose advertising or listing platforms, and they are necessary for effectively reaching and transacting with buyers in a fragmented and geographically dispersed market.

14.     This product market exhibits the characteristics of a two-sided market, where the platform simultaneously serves two distinct but interdependent groups: sellers (i.e., brokers and dealers) and buyers of marine vessels. As recognized in antitrust economics and jurisprudence, two-sided platforms are defined by network effects, that is, the value of the platform to one side increases as participation on the other side grows. In the market for online marine vessel listing and marketing services, sellers are drawn to platforms with large pools of active and qualified buyers, while buyers benefit from access to a wide and diverse set of listings curated and maintained by professional brokers. These indirect network effects amplify platform scale advantages and can result in high barriers to entry and durable market power.

15.     There are no reasonable substitutes for online marine vessel listing and marketing services as defined in this market. Traditional advertising channels, such as newspapers, or boating magazines, are not effective alternatives, as they lack the reach, interactivity, and buyer targeting that online platforms provide. General online marketplaces (e.g., Craigslist or Facebook Marketplace), or private broker websites are also not adequate substitutes, as they do not offer the professional-grade functionalities or visibility required by commercial sellers.

**B.  Market Power**

16.     *Market Power.* Boats Group controls a dominant share of the U.S. market for online boat listing and marketing services, operating the three largest online platforms used by brokerages

- 5 -

and dealers to list and market recreational marine vessels. Boats Group publicly claims to hold approximately 75% of the global market for such services. While that figure encompasses international operations, Boats Group owns and operates the leading platforms used by U.S.-based boat brokerages and sellers, and no comparable U.S.-based competitors operate at a similar scale or reach. The International Yacht Brokers Association ("IYBA") is the marine industry's largest yacht brokerage association. Notably, 89.5% of Florida-based brokers that are IYBA members and actively selling boats through online marketing have used Boats Group's platforms. Accordingly, Boats Group's share of the U.S. market is believed to be similarly high, if not greater, than its global share, and sufficient to confer monopoly power in the relevant geographic market. Sellers who wish to remain competitive have no commercially viable alternative to using Boats Group's services and platforms. This dominance has enabled Boats Group's predatory conduct to persist over time, allowing it to impose supracompetitive prices for subscription-based listing and marketing services without losing significant business to rivals, restrict sellers' ability to switch to alternative services, and foreclose entry and expansion by rival platforms.

17.     *High Barriers to Entry.* The U.S. market for online boat listing and marketing services is entrenched with significant and multifaceted barriers to entry. These barriers are both structural and strategic, and they enable Boats Group to preserve its monopoly power and foreclose competition.

18.     Entry into this market requires substantial upfront capital investment. A new entrant must develop a technologically sophisticated platform, implement and integrate secure and scalable data infrastructure and payment systems, deliver a robust user interface capable of managing complex recreational vessel listings and transactions, and invest in search engine optimization and

social media strategies. These technical demands alone present a formidable deterrent to new market participants.

19.     In addition, Boats Group benefits from overwhelming brand recognition and consumer trust through its longstanding control over the industry's most established platforms, Boat Trader, YachtWorld, and boats.com. These platforms are widely recognized as synonymous with online boat sales in the U.S. Buyers and sellers disproportionately prefer them, creating a substantial reputational barrier that new entrants cannot easily overcome.

20.     The market is further insulated by strong network effects, a structural feature common to two-sided digital platforms. In such markets, the utility of the platform to one group of users, such as marine brokers and dealers, is directly correlated with the level of participation by users on the other side of the platform, namely, buyers of marine vessels. Sellers are more likely to use a platform with a large and active pool of buyers, while buyers are drawn to platforms offering the broadest selection of listings from reputable sellers. This interdependence reinforces Boats Group's dominance and discourages users from switching to alternative platforms with less traffic or inventory.

21.     Boats Group derives a significant competitive advantage from these indirect network effects, which operate as a persistent barrier to entry. Sellers are incentivized to list inventory where buyer traffic is highest, and buyers are drawn to platforms with the broadest and most diverse selection of listings. This two-sided dynamic creates a self-reinforcing cycle that locks in Boats Group's dominance and prevents new entrants from achieving critical mass. Platforms lacking an existing user base struggle to gain listings or traffic, making it virtually impossible to scale.

22.    As Dr. Fiona Scott Morton, Professor of Economics at Yale University, explained in testimony before the House Subcommittee on Antitrust:

> Digital platforms combine economies of scale, low marginal costs, economies of scope through base of data and an installed base of users, network effects, multi-sidedness, and sometimes a global reach. All of these attributes together tend to generate concentrated markets, or market structures containing few firms. With the addition of inertial (or "sticky") consumers these markets feature high entry barriers which make it difficult for new firms to enter the market to create competition.
>
> The harms from insufficient competition appear in prices that are higher than competitive prices, quality that is lower than competitive quality, and less innovation than consumers would benefit from in competitive markets.[1]

23.    Beyond these structural barriers, Boats Group reinforces its market dominance through the use of contractual restraints that functionally foreclose competition. Specifically, Boats Group's subscription agreements contain exclusive dealing provisions that either prohibit or strongly discourage sellers, particularly brokers and dealers, from listing their inventory on competing platforms. For example, as of February 21, 2025, Boats Group's Service Agreement included the following language in Section 24.5.3:

> 24.5 Customer Responsibilities. Customer shall cooperate with Boats Group in its performance of the Services by, without limitation:
>
> …
>
> 24.5.3 providing Boats Group with timely access to data, information and personnel of Customer. *Customer is prohibited, now and in the future, from any conduct that would imply in any way to any third party that any Customer listings originate from other than Boats Group.*

---

[1] Testimony of Fiona M. Scott Morton, Ph.D., House Judiciary Committee (Mar. 7, 2019), https://docs.house.gov/meetings/JU/JU05/20190716/109793/HHRG-116-JU05-Wstate-ScottMortonF-20190716.pdf (last visited June 19, 2025).

24.     These exclusive dealing clauses prevent rival platforms from gaining access to the scale and inventory necessary to attract users and build network effects. As a result, sellers who might otherwise consider switching platforms or dual-listing are contractually restricted, making multi-homing or platform-switching commercially impractical or outright impossible.

25.     Boats Group's use of exclusive dealing provisions is particularly harmful given its entrenched market power. In this context, exclusive contracts substantially foreclose access to essential competitive inputs (listings and traffic), deny rivals the scale necessary to challenge Boats Group, and harm consumers by stifling competition on price, service, and innovation.

26.     For example, the IYBA launched an alternative platform, *Yachtr*, in 2024 in direct response to Boats Group's escalating and anticompetitive pricing. Despite IYBA's institutional backing and market familiarity, *Yachtr* has struggled to gain listings and user traffic due to the industry's high barriers to entry and to Boats Group's entrenched dominance, strong network effects, and restrictive contractual practices. *Yachtr's* inability to compete with Boat Group's platforms demonstrates the high barriers facing new entrants in the relevant geographic and product markets.

## C. Anticompetitive Conduct

27.     Boats Group's path to dominance in the U.S. online marine vessel listing and marketing services market began with a series of strategic acquisitions that systematically eliminated meaningful competition. The foundation was laid when Trader Publishing Company owned and operated Boat Trader, the largest online boating marketplace in the U.S. In 2004, Trader Publishing Company consolidated control of the industry by acquiring two of its main competitors, YachtWorld.com and boats.com, bringing all three major players under common ownership and substantially reducing competition in the relevant market.

28.     This structural consolidation culminated in the formal creation of Dominion Marine Media (DMM) in 2011, later rebranded as Boats Group, LLC. In 2016, private equity firm Apax Partners acquired DMM in one of the largest transactions in the marine industry. Shortly thereafter, in January 2017, DMM acquired YachtCloser.com, the leading digital contract management platform for yacht brokerages. In 2021, another private equity firm, Permira, acquired Boats Group, further entrenching its control over both front-end and back-end digital infrastructure critical to vessel marketing and sales.

29.     Today, Boats Group controls an estimated 75% of the global market for online marine vessel listing and marketing services, and a similarly dominant share of the U.S. market. In Florida, 89.5% of brokers who are IYBA members and actively selling boats through online marketing use Boats Group's platforms, further underscoring Boats Group's entrenched position in key regional markets. Boats Group's portfolio includes major online listing platforms such as Boat Trader, YachtWorld, and boats.com, along with integrated services, such as BoatWizard (a marketing and customer relationship management tool) and YachtCloser (a service providing standardized contracts and closing tools). These tools are offered exclusively to Boats Group's customers, reinforcing vertical integration and making Boats Group indispensable to industry participants by consolidating control over both public-facing listings and critical business operations.

30.     Having achieved market dominance, Boats Group has used its market power to impose steep and sustained price increases on its customer base, primarily small to mid-sized brokerages and dealers. For example, in 2014, Plaintiff's combined monthly cost of listing on Boat Trader and YachtWorld was approximately $1,004. By 2017, these prices rose to $1,221. Between

2018 and 2024, pricing surged again, reaching $2,794 in 2021 and $5,128 by 2024, a more than 400% increase over a decade. In 2025, Boat Trader alone charged $2,900 per month for its services.

31.     These supracompetitive prices are not the result of improved quality or innovation to Boat Group's listing platforms, but rather a reflection of Boats Group's ability to unilaterally raise prices due to a lack of viable competitive alternatives. Industry participants have voiced concerns about this disconnect between price and value. For example, Maryline Bossar of ACY Yachts in Maryland noted that "lead generation [is] staying flat" despite rising fees and described the price hikes as "unacceptable." Stewart Roach of Yacht Sales in Massachusetts stated that his firm could no longer absorb the monthly costs and feared being forced out of business.

32.     Boats Group's exclusionary conduct is particularly harmful in a market protected by high structural barriers to entry, including significant capital costs, entrenched brand preferences, and powerful network effects. These conditions make it exceptionally difficult for new entrants to challenge Boats Group's dominance.

33.     Boats Group has fortified these structural barriers through exclusionary contracts. Its subscription agreements contain exclusive dealing provisions that prohibit or discourage brokerages from listing inventory on rival platforms, which restrict customer choice and make multi-homing or platform-switching commercially impractical.

34.     Given Boats Group's dominance, such contractual restraints amplify the exclusionary effects of Boats Group's conduct, foreclosing rivals from accessing the inventory and user scale needed to compete and deterring market entry. IYBA's potential competitor platform, *Yachtr*, launched in 2024, provides a clear example, which despite institutional support from the yacht brokers themselves and market recognition, has failed to gain traction due to Boats Group's entrenched scale, exclusive contracts, and strong network effects. This failure underscores how

Boats Group's conduct, not just market dynamics, prevents the emergence of meaningful competition.

35.     Boats Group's conduct, including its serial acquisitions, sustained supracompetitive pricing, exclusive dealing provisions, and exploitation of structural entry barriers, constitutes monopolization and/or attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 and Florida Statutes § 542.19. Boats Group has willfully maintained and expanded its monopoly power through exclusionary practices rather than competition on the merits. This conduct has enabled Boats Group to preserve its monopoly power not through superior products or services, but through exclusionary tactics that suppress competition, reduce entry and innovation, and harm sellers and consumers.

## V.       CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), and (b)(2) on behalf of himself and a class of direct purchasers seeking injunctive and declaratory relief (the "Nationwide Class"), defined as:

> All persons and entities in the United States who purchased
> subscription-based marketing and listing services from Boats Group
> between January 1, 2014 and the present, and who suffered damages
> as a result of Boats Group's anticompetitive conduct.

37.     Plaintiff also brings this under Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and a class of direct purchasers seeking damages and related equitable relief (the "Florida Class"), defined as:

> All persons and entities in Florida who purchased subscription-based
> marketing and listing services from Boats Group between January 1,
> 2014 and the present, and who suffered damages as a result of Boats
> Group's anticompetitive conduct.

38.     Excluded from these Nationwide Class and the Florida Class (collectively, the "Classes") are Defendant and its officers, directors, or employees; any entity in which Defendant has a controlling interest; any affiliate, legal representative, heir, or assign of any such excluded party; any federal, state, or local governmental entities; any judicial officer presiding over this action and members of his/her immediate family and judicial staff; any juror assigned to this case; and any business majority-owned by any such person.

39.     The members of the Classes are so numerous that joinder is impracticable. While the exact number of Class members is unknown, Plaintiff believes, based on market structure and publicly available data, that there are thousands of members of the Nationwide and Florida Classes. Class membership can be ascertained through objective criteria using Defendant's business and sales records.

40.     There are questions of law and fact common to the Classes, the resolution of which will drive the litigation and predominate over any individual issues. These common questions include, but are not limited to:

    a.   Whether Boats Group engaged in exclusionary or anticompetitive conduct in violation of federal and/or state antitrust laws;

    b.   Whether Boats Group's conduct led to the acquisition, maintenance, or abuse of monopoly power in the market for online boat listing and marketing services;

    c.   Whether Boats Group's conduct resulted in supracompetitive pricing for such services;

    d.   Whether Plaintiffs and Class members suffered antitrust injury as a result of the conduct alleged;

    e.   The nature and extent of class-wide damages; and

      f.   Whether injunctive and equitable relief is appropriate.

41.    Plaintiff's claims are typical of the claims of members of the Classes. Plaintiff and Class members purchased subscription-based marketing services from Boats Group and were similarly harmed by the same anticompetitive conduct. Plaintiff's claims arise from the same course of conduct as those of other Class members.

42.    Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no conflicts of interest with other Class members and has retained counsel experienced in complex litigation, including class actions.

43.    The questions of law and fact common to the Classes predominate over any questions affecting only individual members. Class-wide issues, including the nature of Boats Group's conduct, the existence of market power, and the effect on prices, will determine liability and damages.

44.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The prosecution of separate actions by individual Class members would risk inconsistent or varying adjudications and would impose unnecessary burden and expense. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

45.     Plaintiff knows of no material obstacles to maintaining this action as a class action under Federal Rule of Civil Procedure 23.

## VI.     ANTITRUST INJURY AND STANDING

46.     Plaintiff and members of the Classes have suffered, and will continue to suffer, antitrust injury as a direct and proximate result of Boats Group's unlawful acquisition, maintenance, and exercise of monopoly power in the market for online marine vessel listing and marketing services in the U.S.

47.     As direct purchasers of Boats Group's subscription-based listing and marketing services, Plaintiff and members of the Classes have paid prices substantially above those that would prevail in a competitive market. These overcharges constitute a clear and quantifiable form of economic harm. Plaintiff and members of the Classes were also deprived of the benefits of effective competition, including competitive pricing, increased output, improved quality, and meaningful platform choice.

48.     Buyers of marine vessels have likewise sustained antitrust injury as a consequence of Boats Group's exclusionary conduct. The supracompetitive fees imposed on brokers and dealers are passed through to buyers in the form of higher prices. Moreover, as seller participation is diminished by rising costs and lack of viable alternatives, buyers face a reduction in available inventory, geographic limitations, and impaired access to critical listing information. Boats Group's manipulation of listing visibility and platform functionality further distorts buyer outcomes and impairs market efficiency.

49.     These injuries are the direct, foreseeable, and proximate result of Boats Group's unlawful conduct, including but not limited to its exclusionary acquisitions, restrictive contractual

provisions, and sustained imposition of inflated pricing. The resulting harm is not limited to individual market participants but constitutes injury to the competitive process itself.

50.     Plaintiff and members of the Classes have antitrust standing to assert claims under federal law. The injuries alleged are of the type the antitrust laws were designed to prevent, are traceable to Boats Group's anticompetitive conduct, and are capable of measurement through established and accepted economic methodologies.

## VII.    CLAIMS FOR RELIEF

### COUNT I
### MONOPOLIZATION:
### VIOLATION OF SHERMAN ACT SECTION 2
### (ON BEHALF OF NATIONWIDE CLASS)

51.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 50 above.

52.     Boats Group possesses monopoly power in the relevant market for online boat listing and marketing services in the U.S as demonstrated by its power to unilaterally set supracompetitive prices and Boats Group's dominant market share.

53.     Boats Group has publicly claimed to hold 75% of the global market for such services, and it controls the dominant platforms used by U.S.-based brokers and sellers, including Boat Trader, YachtWorld, and boats.com. Based on its control of these platforms and lack of meaningful competition at scale, Boats Group's U.S. market share is reasonably inferred to be similarly dominant. In Florida, 89.5% of brokers who are IYBA members and actively selling boats through online marketing have used Boats Group's platforms, further supporting this inference.

54.     Boats Group has willfully acquired, maintained, and expanded its monopoly power through exclusionary conduct not based on superior products or competition on the merits. Rather,

Boats Group implemented a deliberate strategy to eliminate rivals and reinforce structural barriers to entry.

55.     As alleged above, Boats Group entrenched its monopoly position through a series of strategic acquisitions that eliminated its largest competitors, enabled it to impose sustained supracompetitive pricing, and facilitated its use of exclusive dealing provisions that foreclose competitors from accessing necessary inventory and scale.

56.     Boats Group's monopoly power has allowed it to impose steep and sustained price increases on its customers, including Plaintiff and members of the Classes, without corresponding improvements in quality, service, or innovation. This conduct has harmed competition, driven several businesses out of the market, and deprived customers of meaningful alternatives.

57.     Boats Group's conduct lacks any legitimate procompetitive justification. Any asserted efficiencies are outweighed by the anticompetitive effects, including inflated prices, reduced innovation, suppressed market entry, and diminished customer choice.

58.     Boats Group's actions constitute unlawful monopolization and/or attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

59.     As a direct and proximate result of Boats Group's unlawful conduct, Plaintiff and members of the Classes have suffered injury to their business and property, including paying inflated subscription fees and being denied the benefits of a competitive market. Plaintiff and the Classes are entitled to treble damages, costs of suit, and reasonable attorney's fees, pursuant to 15 U.S.C. § 15.

60.     Unless enjoined, Boats Group's conduct will continue to cause irreparable harm for which there is no adequate remedy at law. Plaintiff and the Classes are entitled to injunctive relief pursuant to 15 U.S.C. § 26.

**COUNT II**
**ATTEMPTED MONOPOLIZATION:**
**VIOLATION OF SHERMAN ACT SECTION 2**
**(ON BEHALF OF NATIONWIDE CLASS)**

61.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 50 above.

62.     Boats Group has engaged in a course of anticompetitive conduct, including exclusionary acquisitions, restrictive dealing provisions, and the imposition of supracompetitive prices, with the specific intent to acquire, maintain, or expand monopoly power in the market for online boat listing and marketing services in the U.S.

63.     Boats Group's conduct demonstrates a deliberate effort to suppress competition and fortify its dominance, not through innovation or competition on the merits, but through exclusionary tactics that prevent market entry and foreclose rivals from scale and inventory.

64.     Boats Group's current position in the market, including its control of the dominant platforms used by U.S. brokers, its publicly reported 75% global share, and the fact that 89.5% of Florida-based brokers who are IYBA members and actively selling boats through online marketing have used Boats Group's platforms, gives rise to, at a minimum, a dangerous probability of achieving or maintaining monopoly power in the relevant market. This likelihood is further heightened by  the high structural barriers to entry, network effects, and lack of viable alternatives for buyers and sellers.

65.     Boats Group's conduct constitutes attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

66.     As a direct and proximate result of Boats Group's unlawful conduct, Plaintiff and members of the Classes have suffered injury to their business and property, including overcharges

and the loss of meaningful competitive choice. Plaintiff and the Classes are entitled to treble damages, costs of suit, and reasonable attorneys' fees pursuant to 15 U.S.C. § 15.

67.     Unless enjoined, Boats Group's unlawful conduct will continue to cause irreparable harm for which there is no adequate remedy at law. Plaintiff and the Classes are entitled to injunctive relief pursuant to 15 U.S.C. § 26.

**COUNT III**
**MONOPOLIZATION:**
**FLORIDA ANTITRUST LAW**
**(ON BEHALF OF FLORIDA CLASS)**

68.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 50 above.

69.     Boats Group has engaged in a pattern of exclusionary conduct, including serial acquisitions, restrictive dealing provisions, and sustained supracompetitive pricing, that has unlawfully acquired, maintained and expanded its monopoly power in the market for online marine vessel listing and marketing services in Florida. This monopoly power is reflected in the fact that 89.5% of Florida-based brokers who are IYBA members and actively marketing boats online have used Boats Group's platforms, with no viable alternatives.

70.     Boats Group's conduct constitutes monopolization and/or attempted monopolization in violation of the Florida Antitrust Act of 1980, Fla. Stat. § 542.19.

71.     As a direct and proximate result of Boats Group's unlawful conduct, Plaintiff and members of the Florida Class have suffered injury to their business and property, including paying inflated subscription fees and being denied the benefits of a competitive market. Plaintiff and the Florida Class are entitled to treble damages, the costs of suit, and reasonable attorney's fees, pursuant to Fla. Stat. § 542.22.

72.     Unless enjoined, Boats Group's conduct will continue to cause irreparable harm for which there is no adequate remedy at law. Plaintiff and the Florida Class are entitled to injunctive relief pursuant to Fla. Stat. § 542.23.

**COUNT IV**
**ATTEMPTED MONOPOLIZATION:**
**FLORIDA ANTITRUST LAW**
**(ON BEHALF OF FLORIDA CLASS)**

73.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 50 above.

74.     Boats Group has engaged in a course of exclusionary and anticompetitive conduct, including acquisitions that eliminated competition, restrictive dealing provisions, and the imposition of supracompetitive prices, with the specific intent to acquire, maintain, or expand monopoly power in the Florida market for online marine vessel listing and marketing services. This intent and effect are underscored by Boats Group's current dominance in the region, as evidenced by the fact that 89.5% of Florida-based brokers who are IYBA members and actively marketing boats online have used Boats Group's platforms.

75.     Boats Group's conduct presents a dangerous probability of achieving or maintaining monopoly power in the relevant Florida market, particularly given the structural barriers to entry, network effects, and lack of viable alternatives for Florida-based brokers and buyers. This conduct constitutes attempted monopolization in violation of the Florida Antitrust Act of 1980, Fla. Stat. § 542.19.

76.     As a direct and proximate result of Boats Group's unlawful conduct, Plaintiff and the Florida Class have suffered injury to their business and property, including overcharges and the loss of meaningful competitive choice. Plaintiff and the Florida Class are entitled to treble damages, costs of suit, and reasonable attorneys' fees pursuant to Fla. Stat. § 542.22.

77.     Unless enjoined, Boats Group's conduct will continue to cause irreparable harm for which there is no adequate remedy at law. Plaintiff and Florida Class are entitled to injunctive relief pursuant to Fla. Stat. § 542.23.

**COUNT V**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE**
**PRACTICES ACT**
**(ON BEHALF OF FLORIDA CLASS)**

78.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 50 above.

79.     Boats Group has engaged in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.204(1).

80.     Specifically, Boats Group's conduct, including but not limited to its acquisition of competitors, imposition of supracompetitive pricing, use of exclusive dealing provisions, and exploitation of high structural barriers to entry, constitutes an unfair method of competition within the meaning of FDUTPA. This conduct offends established public policy, is unethical or unscrupulous, and has caused or is likely to cause substantial injury to consumers and market participants that they could not reasonably avoid.

81.     Boats Group's actions also qualify as deceptive practices to the extent they misled or obscured from customers the lack of meaningful competitive alternatives and the true nature of its pricing power in the market.

82.     As a direct and proximate result of Boats Group's unlawful conduct, Plaintiff and members of the Classes have suffered actual damages, including overcharges for subscription-based marketing services and loss of the benefits of a competitive marketplace, in violation of Fla. Stat. § 501.211(2).

83.     Plaintiff and the Classes are entitled to recover actual damages, attorneys' fees, and costs of suit as provided under Fla. Stat. § 501.2105.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and grant relief as follows:

1.      Declare, find, adjudge, and decree that Boats Group has violated Section 2 of the Sherman Act, 15 U.S.C. § 2, Florida Antitrust Law, Fla. Stat. § 542.19, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, by engaging in unlawful monopolization and/or attempted monopolization,

2.      Permanently enjoin Boats Group from engaging in the anticompetitive and exclusionary conduct described herein and require Boats Group to take affirmative actions necessary to restore competition in the relevant market;

3.      Award treble damages to Plaintiff and the Classes pursuant to 15 U.S.C. § 15 and Fla. Stat. § 542.22, in an amount to be determined at trial, together with the costs of suit and reasonable attorneys' fees;

4.      Award actual damages to Plaintiff and the Classes for Boats Group's violations of FDUTPA, pursuant to Fla. Stat. § 501.211(2), in an amount to be determined at trial;

5.      Award attorneys' fees and costs under FDUTPA pursuant to Fla. Stat. § 501.2105;

6.      Grant such other and further equitable or legal relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable under Federal Rule of Civil Procedure 38(b).

DATED August 14, 2025                    Respectfully submitted,

                                         **STUMPHAUZER KOLAYA**
                                         **NADLER & SLOMAN, PLLC**
                                         Two South Biscayne Boulevard
                                         Suite 1600
                                         Miami, FL 33131
                                         Tel.: (305) 614-1400
                                         Fax: (305) 614-1425

                                         By: */s/ Timothy A. Kolaya*
                                         TIMOTHY A. KOLAYA
                                         Florida Bar No. 056140
                                         tkolaya@sknlaw.com
                                         MATTHEW DELLABETTA
                                         Florida Bar No. 1031216
                                         mdellabetta@sknlaw.com

                                         -and-

                                         **FISHMAN HAYGOOD, LLP**
                                         201 St. Charles Ave.
                                         Suite 4600
                                         New Orleans, LA 70170
                                         Tel: (504) 586-5252
                                         Fax: (504) 586-5250

                                         By: */s/ Kerry J. Miller*
                                         Kerry J. Miller, La. Bar. No. 24562
                                         *(Motion to Appear Pro Hac Vice Pending)*
                                         C. Hogan Paschal, La. Bar No. 38495
                                         *(Motion to Appear Pro Hac Vice Pending)*
                                         kmiller@fishmanhaygood.com
                                         hpaschal@fishmanhaygood.com

                                         ***Attorneys for Plaintiff Brill Maritime, Inc.***
                                         ***d/b/a Export Yacht Sales, individually and***
                                         ***on behalf of all others similarly situated***