**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23663-ALTMAN/Lett**

**BRILL MARITIME, INC. d/b/a**
**EXPORT YACHT SALES**,
*on behalf of itself and all others similarly situated,*

*Plaintiff,*

*v.*

**BOATS GROUP, LLC**,

*Defendant.*

**PLAINTIFF'S RESPONSE TO DEFENDANT, BOATS GROUP, LLC'S STATEMENT IN RESPONSE TO PLAINTIFF'S MOTION TO FILE UNDER SEAL**

Plaintiff, Brill Maritime, Inc. d/b/a Export Yacht Sales ("Plaintiff"), respectfully submits this Response to Defendant, Boats Group, LLC's ("Boats Group") Statement in Response to Plaintiff's Motion to File Under Seal Unredacted Version of First Amended Complaint, [ECF No. 91] (the "Statement"). Under the Court's Protective Order, [ECF No. 42], and Local Rule 5.4, Boats Group—as the Designating Party—bears the burden of overcoming the strong presumption of public access to the First Amended Complaint, [ECF No. 85] (the "Amended Complaint"). Boats Group has not carried that burden. Its Statement offers only category-level, boilerplate assertions of "competitive harm"; it seeks to seal records that are, in substantial part, five to ten years old, or older; and it asks this Court to bury Boats Group's own admissions of monopoly power, exclusionary conduct, and anticompetitive intent.

For years, even decades, Boats Group has concealed from the public the anticompetitive effects of its conduct—as well as its desire to engage in that conduct because of its exclusionary nature, and because it would enable Boats Group to gain monopoly power. The sealed documents finally disclose the illegal nature of that conduct, and the public has a right to know that Boats Group's conduct was

not founded on business acumen, driven by a superior product, or the result of a historic accident. Rather, it was specifically designed to harm the competitive process, as the sealed materials show. Accordingly, for the reasons explained below, the materials should not remain under seal.

**I. Boats Group bears a heavy burden that its generic Statement does not satisfy.**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). That presumption "may be overcome by a showing of good cause, which requires balancing the asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (cleaned up) (quoted in Statement ¶ 4). The Amended Complaint is the foundational judicial record that frames this dispute, and the presumption of public access applies to it with full force.

A party seeking to seal cannot carry that burden with generalized, conclusory assertions of competitive harm. The designating party "must describe the alleged harm it will suffer from any disclosure 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 4430955, at *6 (S.D. Fla. July 20, 2015). Nor does a party's own confidentiality stamp supply that showing: courts in this District explain that simply designating materials "Confidential" or "Highly Confidential" under a protective order is insufficient to warrant sealing. *See CRubin, LLC v. Escoriaza*, No. 19-CV-22261, 2020 WL 2542629, at *1–2 (S.D. Fla. May 19, 2020). That is precisely the deficiency here.

In *PayCargo, LLC v. CargoSprint LLC*—litigation between competitors—the court declined to keep a designating party's documents under seal where that party asserted only that disclosure would "cause [it] competitive injury," because it advanced "[n]o facts or evidence . . . to support these conclusory statements regarding either the sensitivity of the information at issue or the nature or likelihood of the injury claimed." No. 1:19-CV-22995, 2021 WL 2072446, at *1 (S.D. Fla. May 24,

2021). Boats Group's Statement suffers from the identical defect: for each of its 15 document sets, it asserts only that the material is "non-public" and "competitively sensitive," and that "[d]isclosure would" cause "competitive harm" and permit "competitors" to "exploit" it. (Statement ¶ 7). Boats Group never explains how any *specific portion* of the redacted allegations in the Amended Complaint—as opposed to the underlying document as a whole—would inflict any concrete, present competitive injury. That is the showing the law demands, and Boats Group has not made it.

The public interest in access is especially weighty here. Plaintiff brings this action on behalf of a nationwide class of boat brokers and dealers, alleging that Boats Group has illegally monopolized the market for online marine listing and marketing services and, in doing so, inflated the prices its customers are required to pay. Am. Compl. ¶¶ 1–4. The public has a strong interest in access to the factual basis of these claims of market-wide competitive harm. And, by Boats Group's own account, the publicly filed, redacted Amended Complaint already "discloses the substance of Export's factual allegations." Statement ¶ 8. Sealing therefore does not protect any secret theory of the case—which is already public—but only conceals the specific internal statements supporting Plaintiff's allegations that Boats Group has violated the antitrust laws by creating and maintaining a monopoly—and doing so with the specific intent to eliminate competition and maintain its dominant market share.

## II. The information Boats Group seeks to hide from the public is stale.

The "degree of and likelihood of injury if made public" depends heavily on the age of the information. *Romero*, 480 F.3d at 1246. Boats Group asks the Court to seal a body of records that is, in large part, five to ten years old, or even older:

- The "Project Neptune" Confidential Information Memorandum (BG0000033684–033780) and the "YachtCloser – Acquisition Opportunity Overview" (BG0000608763–608778) date to **2016**—a decade ago.
- The Dominion Marine Media Board of Directors materials (BG0000225006–225072)

date to **October 2016**.

- The "Major Market Changes" memorandum from **2010** (BG0000219879–219883) reflects a bygone competitive landscape; Boats Group itself concedes it is "dated." Statement ¶ 7(j).
- The board and "Project Trust" valuation materials (BG0000022488–022514; BG0000022296–022320; BG0000205725–205784) date to **2021**.
- The McKinsey "Project Bimini" commercial due diligence report (PERMIRA-0000001) dates to **December 2020**.

The acquisitions at the center of Plaintiff's claims have, in each instance, closed. Boats Group's predecessor acquired YachtWorld and boats.com in **2004** (Am. Compl. ¶ 30); Boats Group acquired YachtCloser in **January 2017** (id. ¶ 56); and it acquired Trident Funding in **2021** (id. ¶ 62). Documents analyzing these transactions that closed more than five years ago describe a competitive landscape that no longer exists—because Boats Group, with the intent to monopolize the market—quashed this competition. Boats Group's only response is a conclusory assertion that the material remains sensitive "notwithstanding the passage of time" (Statement ¶ 7(d)), offered without any explanation of why these years-old deal projections, valuation multiples, and market snapshots retain present competitive value. Stale commercial information does not support sealing, and Boats Group's refusal to grapple with the age of these records defeats its showing.

## III. Much of the information Boats Group seeks to conceal is already in the public record.

Good cause to seal cannot exist for information that is already publicly available, and much of the material underlying the redacted allegations is exactly that. As the Amended Complaint explains, the deposition testimony of Boats Group's own corporate representatives and former executives—including Ervin James Selzer, Ian Atkins, and Brad Parker—together with numerous internal documents related to the YachtCloser acquisition, were publicly filed in recent state-court litigation,

*Verihull LLC d/b/a Boat History Report v. Boats Group, LLC*, No. 2019-006963-CA-01 (Fla. 11th Cir. Ct.), on July 27, 2022. Am. Compl. ¶ 75 & n.5. Information that Boats Group itself allowed to enter the public record cannot support a claim of competitive harm today.

The acquisitions at the heart of this case were likewise announced publicly by Boats Group and its predecessors when they occurred. *See* Am. Compl. n.14 (public press releases announcing the 2004 acquisition of boats.com and YachtWorld.com and the January 2017 acquisition of YachtCloser). Boats Group has further addressed these same subjects in its own public court filings in other litigation. *See id.* nn. 6–13 (*Boats Group, LLC v. MarineSource, Inc.*, No. 2026-006732-CA-01 (Fla. 11th Cir. Ct.)).

Even Boats Group's market share—the supposedly sensitive metric at the core of several of the designated documents—is something Boats Group has proclaimed publicly, boasting its stranglehold over approximately 75% of the global market for these services. Am. Compl. ¶¶ 99, 194. A company that publicizes its own dominance cannot seal internal documents that say the same thing. Where, as here, the substance of the material is already in the public domain through Boats Group's own testimony, press releases, and court filings, sealing that same information serves no legitimate confidentiality interest.

**IV. The redacted information reflects Boats Group's own admissions of market dominance and anticompetitive intent – not protectable trade secrets.**

There is also a fundamental mismatch between what Boats Group *describes* as the material it seeks to protect (entire documents said to contain valuation methodologies, EBITDA figures, and lists of prospective buyers) and what the redacted allegations of the Amended Complaint ***actually*** convey. Plaintiff did not reproduce *in toto* Boats Group's internal financing scenarios, rate-of-return models, or the identities of prospective transaction counterparties. The sealed allegations instead recount Boats Group's own characterizations of its market power and competitive strategy—for example, the redacted information includes:

- Boats Group's own internal estimates of its share of the relevant market, and of its scale relative to its nearest competitor;
- Internal acknowledgments that no independent platform poses a meaningful competitive constraint on Boats Group;
- Statements gathered from Boats Group's own dealer and broker customers describing the extent to which their businesses depend on Boats Group's platforms, the absence of any practical alternative, and the degrading quality of Boats Group's products; and
- Boats Group's internal descriptions of the motive behind its acquisitions of rivals—namely, to remove competitive threats rather than to improve its products or compete on the merits.

Characterizations of this kind are not trade secrets. They are Boats Group's own descriptions of its market position and its reasons for acquiring rivals—the very heart of Plaintiff's exclusionary-conduct allegations. Generalized statements of market share, competitive standing, and strategic intent do not derive independent economic value from secrecy in the way that a pricing formula or source code might, and the interest of the putative class and the general public in access to the factual basis of this antitrust monopolization claim is precisely the reason this type of information belongs on the public docket. Boats Group cannot transform admissions of anticompetitive intent into sealed trade secrets merely by stamping the documents that contain them "Highly Confidential."

**V. Boats Group seeks to use confidentiality as both a sword and a shield.**

Boats Group's confidentiality claim is undermined by its own conduct. On June 16, 2026—the day this Court issued its Order dismissing the initial Complaint and authorizing Plaintiff to file the Amended Complaint, [ECF No. 84], and the very period in which Boats Group now insists these records must remain sealed to prevent "competitive harm"—Boats Group issued a nationwide press release through PR Newswire, titled *"Federal Court Dismisses Antitrust Lawsuit Against Boats Group in*

*Full,"* publicizing the Court's dismissal order to shape public perception of this lawsuit. Boats Group announced that "a Federal Court has granted its motion to dismiss the antitrust lawsuit (*Brill v. Boats Group*) in its entirety," and inaccurately asserted that "the Court affirmed the lawful nature of Boats Group's business model." Its CEO declared that "[o]ur market position cannot be duplicated by shortcuts or meritless litigation" and that "this ruling makes it clear that we will always vigorously and successfully defend our business against baseless claims."

Nor did Boats Group stop with its own release. Boats Group, through its counsel, provided that statement to Law360, a national legal news service, which the same day published an article—*"Boat Listing Service Escapes Antitrust Claims For Now"*—that quoted the release, reported counsel's statement that Boats Group "is pleased" the Court dismissed "the complaint in its entirety" on the basis that it "failed to allege any anticompetitive conduct," and repeated the company's public characterization of these antitrust claims as "meritless" and "baseless." The article discussed Boats Group's position on the merits of this action at length.

Local Rule 77.2, which governs the release of information by counsel in pending proceedings, reflects this District's policy of discouraging extrajudicial statements to the press regarding the merits of a pending civil action. Plaintiff does not contend that there has been a violation of that Rule. Plaintiff observes only that Boats Group's evident willingness to advance its view of the merits of this case in the press cannot be squared with its insistence that the underlying evidence is too commercially sensitive for the public to see. A party that publicly proclaims the strength of its position (claiming that Plaintiff's allegations of Boats Group's exclusionary conduct and anticompetitive intent are "meritless" and "baseless") is not well positioned to seal the record that would allow the public to test that very proclamation.

Boats Group thus affirmatively injected this litigation—and the strength and legitimacy of its "market position"—into the public arena when doing so served its interests. It cannot simultaneously

seal from that same public the contemporaneous internal records that describe *how* it obtained and maintained that market position: its own documents acknowledging that its acquisitions were undertaken to remove competitive threats rather than to compete on the merits, its customers' statements that they lack any meaningful alternative to Boats Group's platforms, and its recognition that its acquisition of competitors for the purpose of maintaining control over industry sales data operates as a barrier to competition. A litigant may not selectively publicize the aspects of a case that favor it while sealing the evidence that does not. Having told the public that its dominance is the product of "genuine innovation" and a "superior product," and that the allegations of exclusionary conduct are "meritless" and "baseless," Boats Group cannot now invoke confidentiality to conceal its own documents describing that dominance in markedly different terms. The public is entitled to evaluate both accounts.

## VI. Boats Group does not seek to seal—and has therefore abandoned any confidentiality claim over—the November 2020 email (BG0000016306).

The Amended Complaint relies on a November 2020 internal Boats Group email—one that Boats Group itself marked "Highly Confidential"—in which Boats Group identified a specific rival as a competitor it regularly encountered on larger transactions, and which it later acquired. Am. Compl. ¶ 63 (citing BG0000016306). That document is ***not*** among the 15 "Designated Documents" for which Boats Group's Statement seeks continued sealing. *See* Statement ¶ 6. The Protective Order placed the burden squarely on Boats Group, as the Designating Party, to justify sealing on a document-by-document basis, and its Statement expressly represents that it has "identified the specific, discrete documents and information for which continued sealing is warranted." Statement ¶ 5. The document bearing the Bates stamp of BG0000016306 is not among them. Boats Group has therefore made no showing—and asserted no interest—in keeping that email, or the allegations drawn from it, under seal. Any confidentiality designation over BG0000016306 has been abandoned, and the corresponding portions of the Amended Complaint should be filed publicly.

**VII. Conclusion.**

Boats Group has not carried its burden. Its arguments in favor of concealing these documents from public view are conclusory, its records are stale, much of the information is already public, the redacted material reflects admissions rather than secrets, and Boats Group's own public messaging is entirely inconsistent with the confidentiality it now demands. Plaintiff respectfully requests that the Court decline to maintain the unredacted Amended Complaint under seal.

DATED: July 9, 2026

Respectfully submitted,

**STUMPHAUZER KOLAYA & SLOMAN, PLLC**
Two South Biscayne Blvd., Suite 1600
Miami, FL 33131
Tel.: (305) 614-1400

By: */s/ Timothy A. Kolaya*
Timothy A. Kolaya
Florida Bar No. 056140
tkolaya@sknlaw.com
Matthew DellaBetta
Florida Bar No. 1031216
mdellabetta@sknlaw.com

-and-

**MILLER, THIBODEAUX, DYSART, VEITH & PASCHAL, LLC**
643 Magazine Street, Suite 405
New Orleans, LA 70130
Tel: (504) 977-9150

By: */s/ C. Hogan Paschal*
Kerry J. Miller, La. Bar. No. 24562
(Admitted *Pro Hac Vice*)
C. Hogan Paschal, La. Bar No. 38495
(Admitted *Pro Hac Vice*)
kmiller@mtdvp.com
hpaschal@mtdvp.com

***Attorneys for Plaintiff Brill Maritime, Inc. d/b/a Export Yacht Sales, individually and on behalf of all others similarly situated***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 9, 2026, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Timothy A. Kolaya*
TIMOTHY A. KOLAYA