**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-23663-ALTMAN/LETT

BRILL MARITIME, INC. d/b/a EXPORT
YACHT SALES, on behalf of itself and all others
similarly situated,

      Plaintiff,

v.

BOATS GROUP, LLC,

      Defendant.

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED</u>**
**<u>COMPLAINT AND MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND & STATEMENT OF ALLEGED FACTS ................................................2

LEGAL STANDARD...........................................................................................................3

ARGUMENT ........................................................................................................................3

I.      BRILL STILL FAILS TO PROPERLY PLEAD ANY ANTITRUST CLAIMS ..............3

        A.      Brill Still Fails to Plead Exclusionary Conduct ....................................................4

                1.      Brill Fails to Plead That The Acquisitions Harmed Competition................5

                        a.      2004 Acquisitions of YachtWorld.com and Boats.com...................5

                        b.      2017 Acquisition of YachtCloser.com.............................................7

                        c.      2021 Acquisition of Trident Financial LLC ...................................9

                2.      Brill's Claims Based on the Acquisitions Are Time Barred......................10

                        a.      Brill's Fraudulent Concealment Theory Fails...............................12

                        b.      The Continuing Violation Doctrine Does Not Apply ...................13

                3.      Brill Cannot Overcome the AC's Failures Through Pleading
                        "Monopoly Broth" ...................................................................................14

                        a.      Brill's So-Called "Tying" Claim Fails...........................................14

                        b.      Brill Fails to Plead That Boats Group's Lawsuit
                                Is Anticompetitive..........................................................................16

        B.      Brill Still Fails to Allege Harm to Competition in the Market .............................17

        C.      Brill's Other Antitrust Claims Fail for the Same Reasons....................................19

II.     BRILL HAS NOT STATED A CLAIM UNDER FLORIDA'S DECEPTIVE
        AND UNFAIR TRADE PRACTICES ACT ..................................................................20

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Dental Association v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ................................................................................3

*American President Lines, LLC v. Matson, Inc.*,
775 F. Supp. 3d 379 (D.D.C. 2025) ........................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................19

*Aurora Astro Products LLC v. Celestron Acquisition, LLC*,
691 F. Supp. 3d 1132 (N.D. Cal. 2023) ...................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................3

*Bell v. J.N. Hunt Transportation, Inc.*,
427 F. App'x 705 (11th Cir. 2011) ...........................................................................3

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ................................................................................17

*Caron v. NCL (Bahamas), Ltd.*,
910 F.3d 1359 (11th Cir. 2018) ..............................................................................12

*Chicago Studio Rental, Inc. v. Illinois Department of Commerce*,
940 F.3d 971 (7th Cir. 2019) ....................................................................................7

*Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc.*,
2016 WL 3457177 (C.D. Cal. May 11, 2016) .........................................................11

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ................................................................................13

*Credit Bureau Services, Inc. v. Experian Information Solutions, Inc.*,
2012 WL 6102068 (S.D. Fla. Dec. 7, 2012) .............................................................3

*Deere & Co. v. Kinze Manufacturing, Inc.*,
2022 WL 22933709 (S.D. Iowa Feb. 16, 2022) ......................................................6

*Demartini v. Microsoft Corp.*,
662 F. Supp. 3d 1055 (N.D. Cal. 2023) ...................................................................6

**Page(s)**

*Duty Free Americas, Inc. v. Estée Lauder Companies,*
  946 F. Supp. 2d 1321 (S.D. Fla. 2013) ...............................................................4, 9, 19

*Fedance v. Harris,*
  1 F.4th 1278 (11th Cir. 2021) ...........................................................................................12

*General Cigar Holdings, Inc. v. Altadis, S.A.,*
  205 F. Supp. 2d 1335 (S.D. Fla.), *aff'd*, 54 F. App'x 492 (11th Cir. 2002) ...........................14

*Ginsburg v. InBev NV/SA,*
  649 F. Supp. 2d 943 (E.D. Mo. 2009), *aff'd*, 623 F.3d 1229
  (8th Cir. 2010).........................................................................................................8, 21

*Great White North Franchisee Association-USA, Inc. v. Tim Hortons USA, Inc.,*
  2020 WL 8024349 (S.D. Fla. Dec. 21, 2020).........................................................................20

*HCI Technologies, Inc. v. Avaya, Inc.,*
  241 F. App'x 115 (4th Cir. 2007) .........................................................................................8

*Helena World Chronicle, LLC v. Google LLC,*
  2026 WL 787882 (D.D.C. Mar. 20, 2026).............................................................................13

*Hill Dermaceuticals, Inc. v. Anthem, Inc.,*
  228 F. Supp. 3d 1292 (M.D. Fla. 2017).................................................................................20

*Hunt v. American Bank & Trust Co. of Baton Rouge,*
  783 F.2d 1011 (11th Cir. 1986) ...........................................................................................12

*Illinois Tool Works Inc. v. Independent Ink, Inc.,*
  547 U.S. 28 (2006)...............................................................................................................15

*Jack Walters & Sons Corp. v. Morton Building, Inc.,*
  737 F.2d 698 (7th Cir. 1984) ...............................................................................................8

*Jacobs v. Tempur-Pedic International, Inc.,*
  626 F.3d 1327 (11th Cir. 2010) .....................................................................................17, 18

*Kissner v. McDonald's Corp.,*
  2018 WL 5832979 (S.D. Fla. Nov. 2, 2018)...........................................................................15

*McGlinchy v. Shell Chemical Co.,*
  845 F.2d 802 (9th Cir. 1988) ...............................................................................................8

*Midwestern Machinery Co. v. Northwest Airlines, Inc.,*
  392 F.3d 265 (8th Cir. 2004) .........................................................................................11, 13

iii

**Page(s)**

*Morris Communications Corp. v. PGA Tour, Inc.*,
364 F.3d 1288 (11th Cir. 2004) ..................................................................4, 5, 9, 10, 16

*New York v. Facebook, Inc.*,
549 F. Supp. 3d 6 (D.D.C. 2021), *aff'd sub nom.*, 66 F.4th 288
(D.C. Cir. 2021) .............................................................................................................6

*New York v. Meta Platforms, Inc.*,
66 F.4th 288 (D.C. Cir. 2023)........................................................................................11

*Oakley v. Amazon.com, Inc.*,
2017 WL 413292 (N.D. Ga. Jan. 31, 2017)...................................................................15

*Ohio v. American Express*,
585 U.S. 529 (2018)........................................................................................................19

*Olympia Equipment Leasing Co. v. Western Union Telephone Co.*,
797 F.2d 370 (7th Cir. 1986) ...........................................................................................5

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
555 U.S. 438 (2009)........................................................................................................14

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
508 U.S. 49 (1993)..........................................................................................................17

*QSGI, Inc. v. IBM Global Financing*,
2012 WL 1150402 (S.D. Fla. Mar. 14, 2012)................................................................20

*Ramirez v. Kraft Heinz Foods Co.*,
684 F. Supp. 3d 1253 (S.D. Fla. 2023) .........................................................................20

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
471 F. Supp. 3d 981 (N.D. Cal. 2020) .............................................................11, 12, 13

*Run it First, LLC v. CVS Pharmacy, Inc.*,
2022 WL 484862 (S.D. Fla. Feb. 16, 2022) .................................................................19

*Spanish Broadcasting System of Florida, Inc. v. Clear Channel
Communications, Inc.*,
376 F.3d 1065 (11th Cir. 2004) ..................................................................................8, 18

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993)........................................................................................................19

**Page(s)**

*United Farmers Agents Association, Inc. v. Farmers Insurance Exchange,*
  89 F.3d 233 (5th Cir. 1996) ...................................................................................................14

*United States v. Microsoft,*
  253 F.3d 34 (D.C. Cir. 2001) ...................................................................................................4

*Universal Grading Service v. eBay, Inc.,*
  2012 WL 70644 (N.D. Cal. Jan. 9, 2012) ................................................................................9

*UPPI, LLC v. Jubilant Draximage Inc.,*
  2020 WL 6220818 (S.D. Ala. Sept. 18, 2020)........................................................................13

*Verizon Communications Inc. v. Offices of Curtis V. Trinko, LLP,*
  540 U.S. 398 (2004)...................................................................................................................1

*Vibe Micro, Inc. v. Shabanets,*
  878 F.3d 1291 (11th Cir. 2018) ..............................................................................................20

*Wesley Financial Group, LLC v. Westgate Resorts, Ltd.,*
  746 F. Supp. 3d 1342 (M.D. Fla. 2024)..................................................................................15

*Witt Co. v. RISO, Inc.,*
  948 F. Supp. 2d 1227 (D. Or. 2013) .......................................................................................15

*Z Technologies Corp. v. Lubrizol Corp.,*
  753 F.3d 594 (6th Cir. 2014) .............................................................................................11, 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
  401 U.S. 321 (1971)................................................................................................................13

**STATUTES**

15 U.S.C. § 7.................................................................................................................................6

Fla. Stat. § 501.204(1).................................................................................................................20

Fla. Stat. § 542.32 .......................................................................................................................19

Phillip Areeda, Einer Elhauge & Herbert Hovenkamp, *Antitrust Law: An Analysis
  of Antitrust Principles and Their Application*, (CCH) §§ 1753a, 1753f, LEXIS
  (database updated Sept. 2025) ................................................................................................15

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Evid. 201 ........................................................................................................................16

Fed. R. Civ. P. 8............................................................................................................................1

Fed. R. Civ. P. 12(b)(1)...............................................................................................................20

Fed. R. Civ. P. 12(b)(6)................................................................................................................1

Defendant Boats Group, LLC ("Boats Group") by and through its undersigned counsel and pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), hereby moves to dismiss Plaintiff's First Amended Class Action Complaint, *see* ECF No. 88, because it fails to state a cause of action. In support of this Motion, Boats Group sets forth the following:

## INTRODUCTION

This Court dismissed Brill's original complaint, finding, *inter alia*, that Brill had failed to properly plead that Boats Group had engaged in anticompetitive *conduct* in the form of exclusionary acts. ECF No. 84 ("Order") at 12. Brill's Amended Complaint does not cure that dispositive deficiency. Instead, Brill, by its own admission, altered its pleading to address something very different—Boats Group's supposed anticompetitive *intent*. ECF No. 88 ("Amended Complaint" or "AC") at n.1. That sleight of hand does not work. No matter how many bald accusations or antitrust buzzwords Brill throws at the wall in its Amended Complaint, the reality remains that it has not and cannot sufficiently allege that anything Boats Group supposedly did over the past 20-plus years harmed competition and prevented Brill or any other broker from using any of the numerous other boat listing marketplaces that have launched since 2004. The conduct this Court previously found not to be anticompetitive, including Boats Group's decades-old acquisitions, is still not anticompetitive (and is, in any event, time-barred), and the Amended Complaint's "additional" alleged exclusionary conduct is similarly infirm. At bottom, Brill still seeks to penalize Boats Group's years of investment, strategic acquisitions, and product improvements that have made Boats Group's platforms the best and most effective "one-stop shop" for boat listing and marketing services. That is not what the antitrust laws are for. To the contrary, as the Supreme Court recognized in *Verizon Commc'ns Inc. v. Offs. of Curtis V. Trinko, LLP*, investment and creation of superior products, even if it leads to higher prices, "is an important element of the free market system." 540 U.S. 398, 407 (2004).

Despite the Court's admonition that Brill needed to do better in its Amended Complaint, Brill again has failed to properly plead exclusionary conduct.   Accordingly, Boats Group respectfully submits that the Amended Complaint should now be dismissed with prejudice.

**BACKGROUND & STATEMENT OF ALLEGED FACTS.[1]**

Plaintiff Brill is a boat brokerage that allegedly purchases subscriptions and services from Boats Group "to market its inventory to potential buyers." AC ¶ 3.  Boats Group owns and operates three online marketplaces for listing boats: Boat Trader, YachtWorld, and boats.com.  *Id.* ¶ 2.  Boats Group has developed "overwhelming brand recognition and customer trust" through its platforms and offers a broad and diverse selection of listings from "reputable sellers" to a "large and active pool of buyers."  *See id.* ¶¶ 23-24.  Indeed, the very customer that Brill quotes in one document incorporated into the Amended Complaint, *Id.* ¶ 39, makes clear in the very next sentence after the one cited by Brill the value of Boats Group's products: ██████████████████ ████   BG0000036797 at -908.

On August 14, 2025, Brill filed its original complaint, alleging that Boats Group had willfully acquired, maintained, and expanded monopoly power in the "U.S. online boat listing and marketing services" market.  ECF No. 1 ¶¶ 1-3.  Boats Group moved to dismiss and subsequently, while the motion to dismiss was pending, produced over 68,000 documents and voluminous data in response to Brill's discovery requests.  On June 16, 2026, the Court dismissed Brill's claims in full because Brill did not plausibly allege that Boats Group's 2004 acquisitions of YachtWorld.com and boats.com and 2017 acquisition of YachtCloser were anticompetitive, Boats Group's allegedly "exclusionary" terms of service were neither exclusive nor anticompetitive, and price increases did not, on their own, establish harm to competition.  Order 12-13.

---

[1] Boats Group adopts Brill's allegations solely for this motion and does not concede their accuracy.

2

On June 30, 2026, Brill filed the Amended Complaint.  AC ¶¶ 97-131.  The Amended Complaint rehashes Brill's allegations regarding the YachtWorld, boats.com and YachtCloser acquisitions, and adds Boats Group's 2021 acquisition of Trident Financial LLC ("Trident").  AC ¶¶ 61-65.  Brill no longer relies on its failed terms of service and price increase allegations to establish anticompetitive conduct; instead, Brill points to a mishmash of allegations regarding Boats Group's discounts and service offerings and its copyright infringement litigation against its competitor MarineSource.  AC ¶¶ 71-73.

## LEGAL STANDARD

To survive a motion to dismiss, the complaint's allegations "must [] contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Bell v. J.N. Hunt Transp., Inc.*, 427 F. App'x 705, 707 (11th Cir. 2011).  Courts in the Eleventh Circuit recognize "the particular importance of insist[ing] on some specificity in pleading in the context of antitrust cases." *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 2012 WL 6102068, at *11 (S.D. Fla. Dec. 7, 2012).

## ARGUMENT

### I.     BRILL STILL FAILS TO PROPERLY PLEAD ANY ANTITRUST CLAIMS

Despite having access to almost 70,000 of Boats Group's documents, Brill's Amended Complaint fails to cure the fundamental deficiencies identified in the Order.  Brill does not plead a cognizable monopolization claim because: (1) Brill again fails to show that Boats Group achieved or maintained its market position by exclusionary conduct instead of superior product and business acumen; (2) Brill has not pled harm to competition in a two-sided market; and (3)

Brill's claims are barred by the four-year statute of limitations.  Brill's attempted monopolization claim (Count II) and state law antitrust claims (Counts III and IV) fail for the same reasons.

### A.     Brill Still Fails to Plead Exclusionary Conduct

As this Court explained, to sufficiently plead its monopolization claim, Brill must plausibly allege "the willful acquisition or maintenance of monopoly power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Order 12-13; *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1294 (11th Cir. 2004). That element "requires predatory or exclusionary acts or practices that have the effect of preventing or excluding competition within the relevant market." Order 12 (citing *Morris*, 364 F.3d at 1294). Conduct is exclusionary only if it harms the competitive process, not merely individual competitors. *See id.* at 12-13 (citing *United States v. Microsoft*, 253 F.3d 34, 58 (D.C. Cir. 2001)); *see also Duty Free Ams., Inc. v. Estée Lauder Cos.*, 946 F. Supp. 2d 1321, 1337 (S.D. Fla. 2013) (dismissing § 2 claims where allegations "suggest new products can successfully enter the market and that there is upward mobility").

Brill attempts to satisfy this standard by alleging three types of conduct. *First*, Brill repeats its previously rejected allegations that Boats Group's 2004 and 2017 acquisitions were anticompetitive and adds new allegations regarding Boats Group's 2021 acquisition of Trident, which operated entirely outside of Brill's alleged relevant market. AC ¶ 101. *Second*, Brill claims that Boats Group engaged in "tying." *Id.* ¶ 103. And *third*, Brill asserts that Boats Group's lawsuit against MarineSource "foreclosed competition." *See id.* ¶¶ 71-73, 102.  But as was the case with its original complaint, Brill again fails to properly allege any anticompetitive effects or harm to the competitive process based on the alleged conduct.

4

### 1.      Brill Fails to Plead That The Acquisitions Harmed Competition

As this Court explained, it is "not the possession, but the abuse, of monopoly power" that violates Section 2 of the Sherman Act.  Order 14 (citing *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 374 (7th Cir. 1986) (Posner, J.)); *see also New York v. Meta Platforms, Inc.*, 66 F.4th 288, 302 (D.C. Cir. 2023) ("the 'mere possession of monopoly power … is not only not unlawful; it is an important element of the free-market system'" (alteration in original) (citation omitted)).  In the Order, the Court held that although the acquisitions may have resulted in Boats Group obtaining a monopoly, "Brill never alleges that, as part of these acquisitions, Boats Group engaged in any anticompetitive conduct."  Order 15-16.  Brill's Amended Complaint does not cure this deficiency.

#### a.      2004 Acquisitions of YachtWorld.com and Boats.com

Brill repeats its claim that Boats Group's 2004 acquisitions of YachtWorld.com and boats.com, transactions that closed over two decades ago, constitute anticompetitive conduct.  AC ¶ 30.  But Brill still does not allege that the acquisitions themselves had any anticompetitive effect—the same deficiency that doomed its original complaint.  Order 14-15.  Instead, Brill tries to allege that Boats Group made the 2004 acquisitions "out of a desire to engage in exclusionary conduct or to gain monopoly power," pointing to two documents Boats Group produced in discovery.  AC 1-2 n.1 (citation omitted); *id.* ¶¶ 31-32.

As an initial matter, Brill has failed to allege that the 2004 acquisitions resulted in a substantial lessening of competition.  Brill must plead that the 2004 acquisitions amounted to "predatory or exclusionary acts or practices that have the effect of preventing or excluding competition within the relevant market."  Order 15-16 (quoting *Morris*, 364 F.3d at 1294).  Brill has not alleged anything about Boats Group's market share at the time of the 2004 acquisitions, nor has it alleged how much, if at all, the acquisitions increased concentration in the relevant

5

market. *See Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 691 F. Supp. 3d 1132, 1148 (N.D. Cal. 2023) (dismissing Section 2 claim for the 2005 to 2012 time period because plaintiff failed to allege market share prior to the acquisition); *see also Demartini v. Microsoft Corp.*, 662 F. Supp. 3d 1055, 1062-63 (N.D. Cal. 2023) (dismissing 15 U.S.C. § 7 claims because plaintiff had included no allegations as to market share, and the general allegation that the merger "may cause 'higher prices, less innovation, less creativity, less consumer choice, decreased output, and other potential anticompetitive effects' is insufficient"). All that Brill baldly alleges is that the 2004 acquisitions "systematically eliminated meaningful competition" and that, beginning a decade later in 2014, Boats Group used its monopoly power to "impose steep and sustained price increases on its customer base." AC ¶¶ 30, 76. The Court has already rejected these allegations, recognizing that by pleading that the price increases occurred years *after* the acquisitions, Brill "acknowledges that the acquisitions themselves *didn't* violate the antitrust laws." Order 15-16 n.8.

This Court has already rejected the theory that a mere desire to gain monopoly power is sufficient to state a claim, explaining that "the mere acquisition of monopoly power isn't illegal." *Id.* at 15. Nor are allegations that Boats Group pursued the acquisitions with anticompetitive intent sufficient to state a claim. *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 33 (D.D.C. 2021) ("whether a 'monopolist's conduct ... is ... condemned as exclusionary' depends on 'the effect of that conduct, not upon the intent behind it.'"), *aff'd sub nom, New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023); *Deere & Co. v. Kinze Mfg., Inc.*, 2022 WL 22933709, at *16 (S.D. Iowa Feb. 16, 2022) ("Merely alleging anticompetitive intent is insufficient to demonstrate conduct is anticompetitive."). But even if allegations of anticompetitive intent were enough to show a substantial lessening of competition (they are not), neither document Brill cites says anything about Boats Group's intent *at or near the time of the acquisitions*—which would be the

critical inquiry. Brill alleges that the first document, BG0000219879, shows that █████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ AC ¶ 31 (alterations

in original). But the document, titled ██████████████████ was created in *2010* (6 years after

the YachtWorld.com and boats.com transactions) and says nothing about the state of competition,

market shares, or Boats Group's intent in *2004*. The document instead discusses two competitors,

including iboats.com, which █████████████████████████████████████ and

the product offerings that Boat Trader launched to remain competitive with those platforms. *Id.*

Similarly, the second document, BG0000033684, AC ¶ 32, a 2016 draft Confidential Information

Memorandum, reveals nothing about any intent to engage in exclusionary conduct or to acquire

monopoly power more than a decade earlier, let alone any market share or concentration data from

that period. If anything, these documents confirm "growth or development as a consequence of a

superior product, business acumen, or historic accident." *Morris*, 364 F.3d at 1294.

### b. 2017 Acquisition of YachtCloser.com

Brill's allegations regarding the January 2017 acquisition of YachtCloser.com

("YachtCloser") fare no better. YachtCloser was "an eDocumentation provider of standardized

contracts and closing tools." AC ¶¶ 41, 46. As an eDocumentation tool, and not a listing platform,

YachtCloser did not compete in Brill's alleged market of "U.S. boat listing and marketing

services." *Id.* ¶ 1; Order 5-9.

Brill contends that but for the acquisition, Boats Group would have competed directly with

YachtSpring.com ("YachtSpring"), an alleged "MLS for brokerage boats" that YachtCloser was

developing. AC ¶ 45. But the acquisition of a potential competitor is not enough to state an

antitrust claim. *See Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971, 979 (7th Cir. 2019)

7

("'Transfer of business from one company to another, however, without an accompanying effect on competition, cannot be an antitrust violation' because antitrust laws protect competition, not competitors." (citation omitted)); *HCI Techs., Inc. v. Avaya, Inc.*, 241 F. App'x 115, 123 (4th Cir. 2007) (per curiam) ("We have previously recognized that 'the elimination of a single competitor, standing alone, does not prove [the] anticompetitive effect' necessary to establish antitrust injury." (citation omitted)); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988) ("The elimination of a single competitor, without more, does not prove anticompetitive effect.").[2] Instead, as this Court has already pointed out, Brill must allege specific facts showing harm to *competition*, such as that the acquisition resulted in higher prices or reduced quality of service. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1079 (11th Cir. 2004) (affirming dismissal of complaint after finding plaintiff failed to include specific allegations that "prices have actually risen" or that "quantity … has actually decreased"). Brill alleges no facts that suggest that YachtSpring ever meaningfully participated in the relevant market, nor that YachtCloser's potential launch of YachtSpring posed any competitive restraint on Boats Group's prices for listing services or the quality of those services. *See Ginsburg v. InBev NV/SA*, 649 F. Supp. 2d 943, 948 (E.D. Mo. 2009) (rejecting conclusory allegations that "fringe" competitor "somehow influenced or tempered oligopolistic behavior"), *aff'd*, 623 F.3d 1229 (8th Cir. 2010). Brill also has not alleged that the acquisition of YachtSpring foreclosed any future entry into the alleged relevant market. To the contrary, the Amended Complaint contains

---

[2] That Boats Group chose to acquire YachtCloser rather than build its own competing product after conducting a cost-benefit analysis is a business decision as opposed to exclusionary conduct. *See Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 710 (7th Cir. 1984) (Posner, J.) ("Firms constantly face 'make-or-buy' decisions—that is, decisions whether to purchase a good or service in the market or to produce it internally—and ordinarily the decision, whichever way it goes, raises no antitrust question." (citation omitted)).

8

numerous references to competitors that have entered since the acquisition. *See Duty Free*, 946 F. Supp. 2d at 1337 (dismissing Section 2 claims where allegations "suggest[ing] that new products can successfully enter the market" undercut the plausibility of harm to the competitive process); AC ¶ 29 (noting 2020 entry of boatsforsale.com and the 2024 entry of Yachtr).

Moreover, where reasonable procompetitive justifications or efficiencies are evident from the face of the complaint, or from documents it incorporates, dismissal is warranted. *Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *6 (N.D. Cal. Jan. 9, 2012) ("With reasonable, pro-competitive justifications for the [challenged conduct] evident from the face of the complaint and judicially noticeable documents, plaintiffs' claims cannot withstand scrutiny even on a motion to dismiss."). Here, the very diligence presentation that Brill cites, AC ¶ 47, identified that the acquisition would allow Boats Group to create an end-to-end solution for brokers, BG0000608763 at -766; would enable cross-selling and product synergies, *id.* at -767; and would allow Boats Group to ███████████████████████████████████████████████ ███████████████████████████████████████ *id.* Each one of these considerations reflects superior business acumen and a procompetitive rationale for the acquisition—a far cry from anticompetitive intent. *See Morris*, 364 F.3d at 1294.

### c.      2021 Acquisition of Trident Financial LLC

Recognizing the Court's prior rejection of the YachtWorld.com, boats.com and YachtCloser transactions as anticompetitive, the Amended Complaint seeks to plead exclusionary conduct by referencing an additional acquisition—Boats Group's 2021 acquisition of Trident. AC ¶¶ 61-62. Far from supporting its claim, the reference to the Trident acquisition demonstrates Brill's desperation. Trident ████████████████████████ in a ███████████████ served by six principal providers competing for market share. *Id.* ¶ 62; BG0000205725 at -727,

9

-733. Brill has not alleged how the acquisition of a loan origination business, with many other competitors in the space, harmed competition in the alleged relevant market involving listing services, dooming its claim. *See Morris*, 364 F.3d at 1294; *see* Order 12-13. In fact, Brill includes no allegations that it or any boat seller ever paid anything more in subscription or any other fees for Trident's services and certainly has not alleged that prices for Trident's services are higher than they would have been absent Boats Group's acquisition.

Brill instead alleges that Boats Group's Trident acquisition harmed competition because Boats Group hoped ███████████████████████████████████ by giving it access to ████████████████████████████████████████████████ AC ¶ 65 (citation omitted). But seeking to increase sales by improving a product and providing more services is the very essence of competition. The presentation Brill cites confirms that Boats Group viewed the acquisition as strategic across many parts of its business, including Boat History, Driveway Direct, YachtCloser Memberships, Document Services, and business development. BG0000205725 at -729.

### 2. Brill's Claims Based on the Acquisitions Are Time Barred

Even if any of these acquisitions constituted anticompetitive conduct (they do not), Brill's claims based on them are time barred.

In an effort to cure its deficient exclusionary conduct allegations, Brill now unequivocally alleges that Boats Group's abuse of monopoly power occurred at the time of the alleged acquisitions. *See, e.g.*, AC 14, § 3 ("In late 2016, Boats Group acquired its next most credible competitor, YachtCloser, to eliminate competition and maintain its monopoly power."); AC ¶ 30 ("Boats Group's path to dominance in the U.S. online marine vessel listing and marketing services market began with a series of exclusionary acquisitions that systematically eliminated meaningful competition."); AC ¶¶ 101-02. The problem for Brill is that by pleading as such, it is alleging the

10

anticompetitive conduct occurred well outside the limitations period. In other words, in an effort to fix its faulty allegations, Brill pleaded the necessary averments to doom its claims on other grounds.

The statute of limitations for antitrust claims brought by private parties alleging unlawful monopolization and anticompetitive mergers is four years. *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 602-03 (6th Cir. 2014). A "cause of action challenging an acquisition accrues at the time of the merger or acquisition." *Z Techs.*, 753 F.3d at 598-604 (barring § 2 and § 7 antitrust claims predicated on acquisition completed five years before suit); *see also Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 269 (8th Cir. 2004) (barring § 7 claim based on acquisitions completed four years before suit). Price increases post-transaction do not toll the statute of limitations related to those actions. *Z Techs.*, 753 F.3d at 599. Merely classifying acquisitions as part of an "ongoing monopolization scheme" under § 2 does not restart the statute of limitations because if it did, "the statute of limitations for section 7 of the Clayton Act would be written out of the law." *Complete Ent. Re. LLC v. Live Nation Ent., Inc.*, 2016 WL 3457177, at *1 (C.D. Cal. May 11, 2016); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 995 (N.D. Cal. 2020) (dismissing § 2 claim based on acquisitions of Instagram and WhatsApp as time barred); *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 300 n.13 (D.C. Cir. 2023) (holding that laches barred antitrust claim and "reject[ing] the States' argument that the Instagram and WhatsApp acquisitions remain 'subject to challenge now' because they are part of a 'course of conduct [that] remains ongoing'").

Here, the 2004 acquisitions were over two decades old and the January 2017 YachtCloser acquisition was eight years old by the time Brill filed its initial Complaint on August 14, 2025. ECF No. 1. There is no question that Brill's claims based on these acquisitions, which Brill now

alleges were anticompetitive upon execution, are time-barred.  Likewise, Brill's allegations about Boats Group's 2021 Trident acquisition, first raised in its 2026 Amended Complaint, are time barred because the Trident acquisition is a separate and distinct transaction that does not "relate back" to the factual allegations contained in Brill's original complaint.  *Hunt v. Am. Bank & Tr. Co. of Baton Rouge*, 783 F.2d 1011, 1014-15 (11th Cir. 1986) (per curiam) (finding two fraud claims time barred because "they concern a separate incident of fraud" and "depend[] upon allegations of two transactions"); *see also Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (finding claims did not relate back and holding that "the test for relation back is not whether the new facts alleged could substantiate an old, boilerplate claim but whether the old facts alleged could put the defendant on notice that the new claim might be part of the litigation").

### a.     Brill's Fraudulent Concealment Theory Fails

Brill attempts to invoke fraudulent concealment to toll the statute of limitations, AC ¶ 75, but this fails.  Both the 2004 and 2017 acquisitions were publicly announced, as cited in Brill's own Amended Complaint, *id.* n.14, and nowhere does Brill allege the Trident acquisition was a secret.  These public announcements clearly provided Brill with constructive knowledge of the facts that gave rise to its claims.  *See Reveal Chat*, 471 F. Supp. 3d at 993-94 (refusing to toll a Sherman Act limitations period where the parties and the Wall Street Journal publicly announced the acquisitions).

Nor has Brill alleged *fraudulent* concealment because there are no allegations of "affirmative acts or misrepresentations" beyond the acquisitions themselves.  *See Fedance v. Harris*, 1 F.4th 1278, 1285 (11th Cir. 2021).  Brill alleges that Boats Group's characterization of its acquisitions as strategic, rather than anticompetitive, constitutes a misrepresentation.  AC ¶ 75. That is wrong.  Those statements are lawful, "alternative explanations for [Boats Group's] alleged

anticompetitive conduct, and had no effect of actually concealing any of it." *UPPI, LLC v. Jubilant Draximage Inc.*, 2020 WL 6220818, at *24 n.34 (S.D. Ala. Sept. 18, 2020) (time-barring antitrust claim despite plaintiff alleging defendant "explained away" a price hike to conceal anticompetitive purpose).

### b.      The Continuing Violation Doctrine Does Not Apply

Brill's attempt to invoke the continuing violation doctrine by labeling the acquisitions a "scheme" fares no better.  AC ¶ 75.  *First*, the continuing violation doctrine is a creature of "conspiracy" law—but Brill is not advancing a conspiracy claim. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971); *Z Techs.*, 753 F.3d at 599.  *Second*, the limitations period for acquisitions starts when the acquisition is completed, and the continuing-violations doctrine simply does not apply to completed "merger[s] or acquisition[s]." *Z Techs.*, 753 F.3d at 598-604; *Midwestern Mach.*, 392 F.3d at 269-72 (applying the continuing violation doctrine to mergers "makes no sense"); *see also Reveal Chat*, 471 F. Supp. 3d at 994-95 (holding that a merger must be challenged within the limitations period because applying a continuing violation theory would permit indefinite challenges under Section 2).  *Third*, even if it did apply, Brill cannot seek damages based on time-barred claims by bootstrapping them onto new "overt acts" like the Trident acquisition.  *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052 (8th Cir. 2000); *see also Helena World Chron., LLC v. Google LLC*, 2026 WL 787882, at *17 (D.D.C. Mar. 20, 2026) ("[A]ntitrust violations other than the acquisition itself may independently be the basis for continuing violations.  But the consequences of the acquisition alone cannot constitute the continuing violations of such acquisition." (citation omitted)).  Therefore, the continuing violation doctrine does not save Brill's time-barred claims.

### 3.   Brill Cannot Overcome the AC's Failures Through Pleading "Monopoly Broth"

In an effort to claim it has properly pled anticompetitive conduct, Brill sprinkles its Amended Complaint with antitrust buzzwords. However, repeated misuse of antitrust terminology cannot cure faulty allegations. Brill simply cannot show that either Boats Group's alleged "tying" or its litigation against MarineSource are anticompetitive, and as such Brill has failed to allege a plausible claim. *See, e.g., Pac. Bell Tel. Co. v. linkLine Commun., Inc.*, 555 U.S. 438, 457 (2009) ("Two wrong claims do not make one that is right."); *Am. President Lines, LLC v. Matson, Inc.*, 775 F. Supp. 3d 379, 402 (D.D.C. 2025) (A court "must analyze each form of allegedly exclusionary conduct on its own before it can aggregate them.").

### a.   Brill's So-Called "Tying" Claim Fails

Brill claims that Boats Group has forced ancillary product offerings, including YachtCloser's eDocumentation services, on its customers through anticompetitive "tying." AC ¶ 103. Brill is, at best, mistaken in referring to the alleged conduct as tying. Tying is the practice of selling one product or service as the mandatory addition to the purchase of another product or service. It can be illegal when a monopolist leverages its monopoly power in a monopolized market (the "tying" market) to harm competition in another market (the "tied" market). *See Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1354-55 (S.D. Fla.), *aff'd*, 54 F. App'x 492 (11th Cir. 2002). Specifically, it occurs when "a seller refuses to sell one product, which a buyer desires, unless the buyer also agrees to purchase a second product, which is not otherwise desired from this seller on the offered terms." *United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 89 F.3d 233, 235 n.2 (5th Cir. 1996) (citation omitted). Here, however, Brill's allegations make clear that Boats Group simply offered customers additional services, not a mandatory bundle they were forced to purchase.

14

Brill fails to allege a "tie" at all—what Brill characterizes as "tying" is Boats Group's decision to offer customers an opportunity to purchase "additional listing and marketing services offered by Boats Group" in lieu of a price increase on their current service level.  AC ¶ 66.  Brill does not include any factual allegation that customers needed to buy any particular product or service to receive Boats Group's listing services.  *Id.* ¶¶ 103, 110, 122; *Oakley v. Amazon.com, Inc.*, 2017 WL 413292, at \*3 (N.D. Ga. Jan. 31, 2017) (dismissing tying claim when plaintiff did not allege two separate products or that defendant refused to sell them separately).

Moreover, Brill does not define some other market that this purported "tying" harmed (*i.e.*, the tied market).  *See Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 34 (2006) (antitrust challenge to tying examines whether "the tying product was being used to restrain competition *in the market for the tied product*" (emphasis added)); *Wesley Fin. Grp., LLC v. Westgate Resorts, Ltd.*, 746 F. Supp. 3d 1342, 1354 (M.D. Fla. 2024) (dismissing a tying claim where "there is no separate market ... to be tied to anything"); *Kissner v. McDonald's Corp.*, 2018 WL 5832979, at \*3 (S.D. Fla. Nov. 2, 2018) (dismissing a tying claim where plaintiffs failed to allege "separate and distinct [products] with a separate and independent market that is being tied to the purchase of the [tying product]").  Brill also does not allege that it purchased a tied product, which is required to bring a tying claim.  *Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227, 1240-41 (D. Or. 2013) (collecting cases) (dismissing claims and noting "no tying claim can be stated where the plaintiff refused to purchase the tied product" (citation omitted)); *see* Areeda, Elhauge, & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, (CCH) §§ 1753a, 1753f, LEXIS (database updated Sept. 2025)) ("an express tying contract that is proposed to buyers but rejected by them does not constitute a tie" and "the mere termination or rejection of a dealer or customer who refuses to comply with a tie" does not constitute unlawful tying).

Fundamentally, Brill's theory that Boats Group's customers were "forced" to buy ancillary products cannot be squared with its own market definition allegations. Brill alleges that Boats Group's platforms are valuable, and non-interchangeable, because they provide a "suite of specialized tools, including advertising, marine-specific inventory management systems, integration with multiple listing services (MLS), customized sales presentation tools, contract drafting capabilities, and buyer analytics," which makes them successful at "effectively reaching and transacting with buyers." AC ¶ 13. Brill cannot have it both ways. It cannot allege that brokers value Boats Group's suite of tools so highly that no other offering is an adequate substitute, *id.* ¶¶ 13, 39, while also alleging that it was anticompetitive for Boats Group to offer brokers that very same suite of tools. *Id.* ¶ 103. Brill's own allegations establish that Boats Group's provision of integrated services is competition that benefits customers, not an anticompetitive tying arrangement.

b.    <u>**Brill Fails to Plead That Boats Group's Lawsuit Is Anticompetitive**</u>

Brill next contends that a copyright infringement lawsuit that Boats Group filed against its competitor, MarineSource, somehow constitutes anticompetitive conduct. *Id.* ¶ 71. In that lawsuit, Boats Group brings claims against MarineSource's illegal scraping of listings and data from Boats Group's website.[3] Boats Group's effort to protect its intellectual property is procompetitive because it encourages investment and innovation by limiting free riding. *See Morris*, 364 F.3d at 1295-96. Importantly, the lawsuit is protected by the First Amendment and immune from antitrust liability absent a showing that it is both objectively baseless and subjectively baseless. *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).

---

[3] The complaint is a public record, and the Court may take judicial notice of the claims that Boats Group asserted and the allegations that Boats Group made. Fed. R. Evid. 201.

Brill has not come close to pleading sufficient facts to allege that Boats Group's lawsuit is exclusionary. All Brill alleges is that MarineSource disputes Boats Group's claims. AC ¶ 71. That is not enough to show "that no reasonable litigant could realistically expect success on the merits." *Pro. Real Est.*, 508 U.S. at 60. Nor has Brill alleged that Boats Group is using the legal *process*, as opposed to the *outcome* of that process, to harm competition. *See id.* at 60 n.5, 61 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). AC ¶¶ 71-73. Brill's claim regarding the lawsuit fails.

**B.      Brill Still Fails to Allege Harm to Competition in the Market**

Even if Brill had identified anticompetitive conduct, its claim would still fail because Brill has not alleged "a factual connection between the alleged harmful conduct and its impact on *competition* in the market." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010) (emphasis added).

*Price Increases.* The Court was clear: "price increases aren't enough to show harm to competition." Order 19 (citation modified). Yet Brill's primary allegation of harm remains its conclusory statement that Boats Group charged supracompetitive prices beginning in 2014, ten years after the 2004 acquisitions of YachtWorld.com and boats.com. AC ¶ 76. As the Court already held, that is insufficient. *Id.* at 19-20; *see Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012) (allegations of increasing prices to consumers do not sufficiently allege an injury to competition because raising prices can be "fully consistent with a free, competitive market"). Even after months of discovery, Brill still does not allege facts to plausibly plead that Boats Group's alleged conduct injured competition in the market, nor does it explain what prices brokers would have paid absent the challenged conduct, or that brokers would have paid less for marketing and listing subscriptions to boats.com, Boat Trader, or YachtWorld had YachtCloser or Trident remained independent. *See Jacobs*, 626 F.3d at 1339 (affirming dismissal of Sherman Act

17

claim because plaintiff did not establish "the competitive level above which [Defendant's] allegedly anticompetitive conduct artificially raised prices").

*Reduced Quality.* Brill's pivot to allegations that Boats Group's products have ███████ ████ is insufficient to allow Brill's claims to proceed. AC ¶ 78. Brill's allegations regarding quality reflect general customer complaints, unrelated to any acquisition, alleged tie, or lawsuit. *Id.* To the contrary, Brill alleges that the acquisitions at issue enhanced Boats Group's products, not degraded them. *See id.* ¶¶ 13, 23. Brill has not attempted to plead "a factual connection between the alleged harmful conduct" and its claimed reduction in quality. *Jacobs*, 626 F.3d at 1339.

*Reduced Choice.* Brill further claims that Boats Group's conduct "reduced choice for customers." AC ¶ 79. Brill recites a customer complaint that ████████████ ████████████████████████████████ *Id.* (citations omitted). But the Amended Complaint identifies entry from multiple competitors (*id.* ¶ 29) and does not identify how Boats Group's alleged conduct excluded either of them (or any others). Brill acknowledges Yachtr, a platform with "TYBA's institutional backing and market familiarity" entered the alleged market just two years ago and claims it has "struggled to gain listings and user traffic" because of Boats Group's "strong network effects." *Id.* But Brill actually alleged that those "network effects" make Boats Group's listings more valuable to brokers. *Id.* ¶ 34. All that Brill has alleged is competition on the merits, which is not antitrust injury. *See Spanish Broad.*, 376 F.3d at 1069 (explaining the Sherman Act "directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself" (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993))).

18

*Harm to Buyers.* Brill again characterizes the relevant market as a "two-sided market" that "simultaneously serves two distinct but interdependent groups: sellers (i.e. brokers and dealers) and buyers of marine vessels." AC ¶ 14. Under *Ohio v. American Express*, Brill must plausibly allege harm on both sides of the alleged market to demonstrate anticompetitive harm because "[a]ny other analysis…could chill the very conduct the antitrust laws are designed to protect." 585 U.S. 529, 546 (2018). The Amended Complaint is devoid of any factual allegations of harm to *buyers*, the other side of the two-sided market Brill defines. Brill's only buyer-side allegations are that supracompetitive fees are "passed through to buyers in the form of higher prices" and that "buyers face a reduction in available inventory, geographic limitations, and impaired access to critical listing information," AC ¶ 94. Such assertions are unsupported by any facts and are entitled to no weight on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Brill has failed to plead harm to competition in the market as a whole, its antitrust claims fail.

### C.   Brill's Other Antitrust Claims Fail for the Same Reasons

Because Brill has not adequately alleged anticompetitive conduct or harm to competition necessary to support its monopolization claim, its attempted monopolization claim (Count II) also fails. *See Duty Free*, 946 F. Supp. 2d at 1338 (dismissing attempted monopolization claim after finding plaintiff failed to show defendant engaged in anticompetitive conduct). Because the Florida Antitrust Act is construed in accordance with the Sherman Act, Fla. Stat. § 542.32 (2025), Brill's state law monopolization (Count III) and attempted monopolization (Count IV) claims fail for the same reasons. *See Run it First, LLC v. CVS Pharmacy, Inc.*, 2022 WL 484862, at *4 n.2 (S.D. Fla. Feb. 16, 2022) (dismissing Florida Antitrust Act claims because parallel federal antitrust claims fail); *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1300 n.3 (M.D. Fla. 2017) (same). Counts II, III, and IV should therefore be dismissed.

## II. BRILL HAS NOT STATED A CLAIM UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

Count V of Brill's Amended Complaint alleges a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1) (2025). To the extent Brill's FDUTPA claim is premised on the same allegations underlying its Sherman Act claims, AC ¶¶ 126, 128, that claim fails for the same reasons. *QSGI, Inc. v. IBM Glob. Fin.*, 2012 WL 1150402, at *4 (S.D. Fla. Mar. 14, 2012). Additionally, Brill does not have Article III standing to pursue a FDUTPA claim based on deception, and its claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1). *See Great White N. Franchisee Ass'n-USA, Inc. v. Tim Hortons USA, Inc.*, 2020 WL 8024349, at *3 (S.D. Fla. Dec. 21, 2020). Courts have found that a plaintiff lacks Article III standing where, despite having pled a price inflation theory of damages, plaintiffs continue to receive benefits from the product and fail to allege the hypothetical price at which the product would sell if not for the alleged FDUTPA violation. *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1259-60 (S.D. Fla. 2023). Here, there is no dispute that Brill continues to receive the benefits of using Boats Group's products, AC ¶ 5, and nowhere in the Amended Complaint does Brill even attempt to plead the hypothetical price at which Boats Group's products would have sold in the but-for world.

Irrespective of the pleading deficiencies with Plaintiff's FDUTPA claim, that claim still must be dismissed. As this Court previously noted, "[w]hen all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well." Order 23 (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018)).

## CONCLUSION

Defendant respectfully requests that the Court dismiss Brill's claims with prejudice.

Dated: July 21, 2026

Respectfully submitted,

By: */s/ Sean A. Burstyn*
Sean A. Burstyn, Esq.
Florida Bar No. 1028778
**Burstyn Law PLLC**
1101 Brickell Avenue,
Suite S-700
Miami, FL 33131
Tel: (305) 204-9808
Email: sean.burstyn@burstynlaw.com
docketing@burstynlaw.com

Lawrence E. Buterman – PHV
**Latham & Watkins LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1264
Email: lawrence.buterman@lw.com

Anna M. Rathbun – PHV
Christopher J. Brown – PHV
Graham B. Haviland – PHV
**Latham & Watkins LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Email: anna.rathbun@lw.com
Email: chris.brown@lw.com
Email: graham.haviland@lw.com

*Counsel for Defendant*
*Boats Group, LLC*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 21, 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

By: /s/ *Sean A. Burstyn*
Sean A. Burstyn, Esq.

22