**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-23663-ALTMAN/LETT

BRILL MARITIME, INC. d/b/a EXPORT YACHT SALES, on behalf of itself and all others similarly situated,

Plaintiff,

v.

BOATS GROUP, LLC,

Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

I. THE OPPOSITION DOES NOT CURE BRILL'S FAILURE TO PLEAD EXCLUSIONARY CONDUCT ..... 1

A. Brill Incorrectly Conflates Intent to Grow With Exclusionary Conduct That Harms the Competitive Process ..... 1

B. The Acquisitions Still Do Not Constitute Exclusionary Conduct Because Brill Fails to Allege Anticompetitive Effects ..... 2

1. The 2004 Acquisitions of YachtWorld and boats.com ..... 2

2. The 2017 Acquisition of YachtCloser ..... 3

3. The 2021 Acquisition of Trident ..... 4

C. Brill Cannot Rely on "Network Effects" to Allege Anticompetitive Conduct ..... 5

D. Boats Group's Level Up Pricing Is Not Exclusionary Conduct ..... 5

E. Brill's Threadbare Allegations Regarding Boats Group's MarineSource Litigation Fail ..... 6

II. THE COURT CAN, AND SHOULD, DISMISS BRILL'S TIME-BARRED CLAIMS NOW ..... 7

A. Brill Fails to Establish that the Limitations Period Was Tolled ..... 8

B. The Continuing Violation Doctrine Does Not Save Brill's Claims ..... 8

C. The Trident Allegations Do Not Relate Back ..... 9

III. BRILL STILL DOES NOT PLEAD HARM IN A TWO-SIDED MARKET ..... 10

IV. BRILL FAILS TO STATE A CLAIM UNDER FLORIDA LAW ..... 10

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arcell v. Google LLC*,
2025 WL 210877 (N.D. Cal. Jan. 16, 2025) .....5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....10

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) .....6

*In re ATM Fee Antitrust Litigation*,
554 F. Supp. 2d 1003 (N.D. Cal. 2008) .....5

*Aurora Astro Products LLC v. Celestron Acquisition, LLC*,
691 F. Supp. 3d 1132 (N.D. Cal. 2023) .....3

*Bray v. Bank of America Corp.*,
784 F. App'x 738 (11th Cir. 2019) .....9

*Caron v. NCL (Bahamas), Ltd.*,
910 F.3d 1359 (11th Cir. 2018) .....9

*Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc.*,
2016 WL 3457177 (C.D. Cal. May 11, 2016) .....8

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) .....8

*Deere & Co. v. Kinze Manufacturing, Inc.*,
2022 WL 22933709 (S.D. Iowa Feb. 16, 2022) .....2

*Demartini v. Microsoft Corp.*,
662 F. Supp. 3d 1055 (N.D. Cal. 2023) .....3

*Duty Free Americas, Inc. v. Estée Lauder Cos.*,
946 F. Supp. 2d 1321 (S.D. Fla. 2013) .....10

*Duty Free Americas, Inc. v. Estée Lauder Cos.*,
2014 WL 1329359 (S.D. Fla. Mar. 31, 2014),
*aff'd*, 797 F.3d 1248 (11th Cir. 2015) .....7

*Ginsburg v. InBev NV/SA*,
649 F. Supp. 2d 943 (E.D. Mo. 2009),
*aff'd*, 623 F.3d 1229 (8th Cir. 2010) .....4

*In re Google Play Store Antitrust Litigation*,
147 F.4th 917 (9th Cir. 2025) .....5

*Helena World Chronicle, LLC v. Google LLC*,
2026 WL 787882 (D.D.C. Mar. 20, 2026) .....8

**Page(s)**

*Hunt v. American Bank & Trust Co. of Baton Rouge*,
783 F.2d 1011 (11th Cir. 1986) ....................9

*Imperial Point Colonnades Condominium, Inc. v. Mangurian*,
549 F.2d 1029 (5th Cir. 1977) ....................9

*Jack Walters & Sons Corp. v. Morton Building, Inc.*,
737 F.2d 698 (7th Cir. 1984) ....................3

*Jacobs v. Tempur-Pedic International, Inc.*,
626 F.3d 1327 (11th Cir. 2010) ....................10

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003)....................6

*Mayor of Baltimore v. Actelion Pharmaceuticals Ltd.*,
995 F.3d 123 (4th Cir. 2021) ....................9

*McWane, Inc. v. F.T.C.*,
783 F.3d 814 (11th Cir. 2015) ....................5

*Midwestern Machinery Co. v. Northwest Airlines, Inc.*,
392 F.3d 265 (8th Cir. 2004) ....................7, 8

*Morris Communications Corp. v. PGA Tour, Inc.*,
364 F.3d 1288 (11th Cir. 2004) ....................4

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
198 F.3d 823 (11th Cir. 1999) ....................9

*National Bancard Corp. (NaBanco) v. VISA U.S.A., Inc.*,
596 F. Supp. 1231 (S.D. Fla. 1984),
*aff'd*, 779 F.2d 592 (11th Cir. 1986)....................5

*New York v. Facebook, Inc.*,
549 F. Supp. 3d 6 (D.D.C. 2021), *aff'd sub nom.*, *New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023)....................2

*North Jackson Pharmacy, Inc. v. Express Scripts Inc.*,
345 F. Supp. 2d 1279 (N.D. Ala. 2004)....................6

*Ohio v. American Express Co.*,
585 U.S. 529 (2018)....................5

*Olson v. PowerBlock, Inc.*,
2022 WL 1624888 (D. Minn. May 23, 2022)....................7

*Phhhoto Inc. v. Meta Platforms, Inc.*,
123 F.4th 592 (2d Cir. 2024) ....................8

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
508 U.S. 49 (1993)....................7

**Page(s)**

*In re Salmon*,
2021 WL 1109128 (S.D. Fla. Mar. 23, 2021)....8

*Tuuci Worldwide, LLC v. Outer, Inc.*,
2026 WL 145455 (S.D. Fla. Jan. 20, 2026)....7

*United States v. Grinnell*,
384 U.S. 563 (1966)....6

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001)....4

*Universal Grading Service v. eBay, Inc.*,
2012 WL 70644 (N.D. Cal. Jan. 9, 2012),
*aff'd*, 563 F. App'x 571 (9th Cir. 2014)....4

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)....6

*Z Technologies Corp. v. Lubrizol Corp.*,
753 F.3d 594 (6th Cir. 2014)....7

**STATUTES**

Fla. Stat. § 542.32 (2025)....10

Brill attempts to save its previously dismissed claims by citing documents it contends show anticompetitive "intent." ECF No. 99 ("Opposition" or "Opp."). But stripped of conclusory rhetoric, the only intent Brill actually alleges is Boats Group's intent to grow and improve its business by offering customers a one-stop shop. As this Court recognized, that is not anticompetitive intent but "the aim of every business endeavor." ECF No. 84 ("Order") at 20.

In any event, a plausible Sherman Act claim requires more than allegations about intent. As the Court made clear, "[t]o be condemned as exclusionary, a monopolist's act must have an 'anticompetitive effect.'" *Id.* at 14. Each of Brill's allegations about Boats Group's supposed exclusionary acts and their alleged anticompetitive effects fails, too. The Opposition confirms Brill has not alleged how any of the challenged conduct harmed the competitive process in its alleged market of "online marine vessel listing and marketing services." ECF No. 88 ("Amended Complaint" or "AC") ¶ 6. Brill's other attempts to save its claims fare no better. Brill abandons its tying claim and tries a new spin on its failed argument that Boats Group's price increases are anticompetitive. This time, Brill says those higher prices meant customers could not spend more of their marketing budgets on other providers' online marine vessel listing and marketing services. There is no support in the case law for Brill's novel theory, and the Court has already rejected the premise that increasing prices can constitute anticompetitive conduct. Order 19-21. Brill's Opposition does not cite a single allegation showing that the process of Boats Group's litigation against MarineSource, as opposed to its potential outcome, has harmed competition. Nor has Brill distinguished the myriad decisions dismissing acquisition-based claims, like the ones at issue here, as time-barred. *See* ECF No. 95 ("Mot." or "Motion") at 10-13 (citing cases).

The Court gave Brill "**one** more chance to replead its claims." Order 24. Brill has again failed to plead any plausible claims. Accordingly, Boats Group respectfully submits that this Court should dismiss Brill's claims with prejudice.

## I. THE OPPOSITION DOES NOT CURE BRILL'S FAILURE TO PLEAD EXCLUSIONARY CONDUCT

### A. Brill Incorrectly Conflates Intent to Grow With Exclusionary Conduct That Harms the Competitive Process

Brill claims that this Court dismissed its first Complaint, (ECF No. 1 ("Compl.")), because it merely failed to allege that "Boats Group's conduct 'had an "anticompetitive effect" or that,' when Boats Group acted, 'it did so out of a desire to engage in exclusionary conduct or gain monopoly power.'" Opp. 1 (citation omitted). Brill accordingly devotes seven pages of its

Opposition to cherry-picked quotes from Boats Group's documents it says demonstrate Boats Group's intent to engage in exclusionary conduct and cure its failed claims. But Brill gets it wrong again. As this Court has already explained, "[t]he mere existence of the power to control prices or exclude competition is not unlawful unless it is coupled with intent," and by "intent" the law does not mean "intent to obtain a monopoly or to capture an ongoing increase in market share"—for "[t]his of course is the aim of every business endeavor." Order 20-21 (citation omitted). Rather, "intent to obtain a monopoly is unlawful only where an entity seeks to maintain or achieve monopoly power by anticompetitive means." *Id.* Here, setting aside Brill's conclusory rhetoric and spin, which are entitled to no weight on a motion to dismiss, these quotes merely describe Boats Group's desire to grow its business by enhancing its product offering. Boats Group's aspiration to develop [redacted] (Opp. 2 (quoting AC ¶¶ 30-32)), its characterizations of acquisitions as "increasing 'value' to Boats Group's customers," (*id.* at 19 (citing AC ¶ 75)), and its goal of centralizing [redacted] (*id.* at 2 (citing AC ¶¶ 33-34)), each reflects a desire to grow Boats Group's business and improve its platforms for its customers. These allegations cannot support Brill's claims because they describe intent to compete, and not exclusionary conduct producing anticompetitive effects.

**B. The Acquisitions Still Do Not Constitute Exclusionary Conduct Because Brill Fails to Allege Anticompetitive Effects**

The Opposition ignores this Court's Order and other decisions holding that a plaintiff bringing a Section 2 claim must plausibly allege anticompetitive *effects*, i.e., harm to the competitive process, not just a competitor. Order 14-15; *see also New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 33 (D.D.C. 2021) (explaining that anticompetitive conduct depends on "the effect of that conduct, not upon the intent behind it"), *aff'd sub nom.*, *New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023); *see also Deere & Co. v. Kinze Mfg., Inc.*, 2022 WL 22933709, at *15 (S.D. Iowa Feb. 16, 2022) (same). Brill does not explain how any of the acquisitions allegedly harmed competition in the relevant market of "online marine vessel listing and marketing services" (Order 5-9; AC ¶ 13). Instead, it recycles its previously rejected allegations and baldly asserts that Boats Group acted "out of a desire to engage in exclusionary conduct or to gain monopoly power." Opp. 8 (citation omitted). Unsupported assertions are insufficient.

**1. The 2004 Acquisitions of YachtWorld and boats.com**

Brill does not dispute that it alleges no facts showing how the 2004 acquisitions harmed

competition—including Boats Group's pre-acquisition market share, increased concentration, or reduced competition. Mot. 5-6. Without those facts, Brill cannot plausibly plead anticompetitive effects in the relevant market. *See Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 691 F. Supp. 3d 1132, 1148 (N.D. Cal. 2023) (dismissing Section 2 claim for failure to allege pre-acquisition market share); *Demartini v. Microsoft Corp.*, 662 F. Supp. 3d 1055, 1062-63 (N.D. Cal. 2023) (same).

Brill instead repeats allegations based on two documents purportedly showing anticompetitive intent. Opp. 8-9. But Brill does not dispute that both were created six to twelve years after the acquisitions and say nothing about competitive conditions or Boats Group's intent in 2004. *Id.*; AC ¶¶ 30-32. The only remaining conclusory allegations are that the 2004 acquisitions "systematically eliminated meaningful competition" and that, beginning a decade later, Boats Group "impose[d] steep and sustained price increases." AC ¶¶ 30, 76; *see also* Opp. 2-3, 8-9. The Court rejected this theory, holding that by pleading price increases years after the acquisitions, Brill "acknowledges that the acquisitions themselves *didn't* violate the antitrust laws." Order 15-16 n.8.

**2. The 2017 Acquisition of YachtCloser**

Brill argues that it has adequately pled that the 2017 acquisition of YachtCloser was anticompetitive because (1) Boats Group decided to build instead of buy "an eDocumentation provider of standardized contracts and closing tools" (AC ¶¶ 41, 46) and (2) YachtCloser had announced that it would launch a multi-listing service (AC ¶¶ 44-45). *See* Opp. 3-4, 17. Neither of those allegations is sufficient for Brill's claims to survive dismissal.

First, Brill's argument that the acquisition was anticompetitive because Boats Group chose to acquire YachtCloser rather than build its own competing product, (Opp. 19), is without merit. Brill completely fails to address the case law Boats Group identified holding the exact opposite. Mot. 8 n.2 (citing *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 710 (7th Cir. 1984) (Posner, J.) ("Firms constantly face 'make-or-buy' decisions—that is, decisions whether to purchase a good or service in the market or to produce it internally—and ordinarily the decision, whichever way it goes, raises no antitrust question.")).

Second, YachtCloser's pre-acquisition announcement of YachtSpring does not show that the acquisition harmed competition. The acquisition is not exclusionary, and Brill alleges no anticompetitive effects flowing from it. Brill identifies no allegations that YachtSpring ever had

any listings, attracted buyer traffic, or competitively constrained Boats Group. Nor does Brill explain how competition during the class period (which begins on August 14, 2021, (AC ¶¶ 82-83)) would have differed but-for that acquisition. Without those factual allegations, YachtSpring cannot qualify as the nascent competitor Brill claims. *See Ginsburg v. InBev NV/SA*, 649 F. Supp. 2d 943, 948 (E.D. Mo. 2009) (rejecting conclusory allegations that "fringe" competitor "somehow influenced or tempered oligopolistic behavior"), *aff'd*, 623 F.3d 1229 (8th Cir. 2010).

None of the cases about nascent competitors Brill cites involve acquisitions. Opp. 15-16. Instead, those cases dealt with actions alleging that the defendant used its alleged monopoly power to erect barriers to entry, harming the competitive process. For example, in *Microsoft*, Microsoft required computer manufacturers who installed Windows operating systems to only pre-install Internet Explorer, which limited Netscape's ability to reach customers. *United States v. Microsoft Corp.*, 253 F.3d 34, 61 (D.C. Cir. 2001). Brill nowhere alleges any similar conduct preventing nascent competitors from forming, nor could it—the AC itself identifies multiple competitors that formed and entered well after 2017, including boatsforsale.com and Yachtr. AC ¶ 29.

Brill's attempt to spin the procompetitive justifications of the YachtCloser acquisition apparent on the face of its own pleading as "fact issues" should be rejected. Opp. 16. Where such justifications are "evident from the face of the complaint and judicially noticeable documents," dismissal is warranted. *Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *6 (N.D. Cal. Jan. 9, 2012), *aff'd*, 563 F. App'x 571 (9th Cir. 2014).

### 3. The 2021 Acquisition of Trident

Brill attempts to save its allegations regarding Trident by conclusively labeling it a competitor. Tellingly, Brill does not explain the alleged market that Trident supposedly was a "competitor" in. This is because Brill's own allegations make clear that Trident was a "loan origination" business, (AC ¶ 62), not a competitor in "online marine vessel listing and marketing services," the alleged relevant market this Court previously allowed to proceed. Order 5-9; AC ¶ 13. At no point in either its original complaint or the AC has Brill ever alleged how acquiring a *loan origination* business—in a space with numerous competitors—harmed competition in the alleged relevant market for *listing and marketing services*. *See Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1294 (11th Cir. 2004); *see also* Order 12-13. The Trident acquisition therefore cannot constitute exclusionary conduct supporting Brill's claims.

### C. Brill Cannot Rely on "Network Effects" to Allege Anticompetitive Conduct

Brill asks this Court to treat "network effects" as a boogeyman, and to find that allegations of increased network effects are sufficient to state an antitrust claim. Opp. 9-11. That is wrong as both a matter of law and economics. Network effects reflect that "the value of the services that a two-sided platform provides increases as the number of participants on both sides of the platform increases." *Ohio v. Am. Express Co.*, 585 U.S. 529, 535 (2018) (finding no anticompetitive effects where a platform exhibited "pronounced indirect network effects"). And this "fundamental economic interdependence" "promotes efficiency and competitiveness." *Nat'l Bancard Corp. (NaBanco) v. VISA U.S.A., Inc.*, 596 F. Supp. 1231, 1260 (S.D. Fla. 1984) (finding VISA's network effects "promote[] efficiency and competitiveness is in a more long-term, economic sense"), *aff'd*, 779 F.2d 592 (11th Cir. 1986); *In re ATM Fee Antitrust Litig.*, 554 F. Supp. 2d 1003, 1016 (N.D. Cal. 2008) (finding network effects led to efficiencies for transactions).

Brill recasts these benefits as anticompetitive conduct. Opp. 9, 12. But its cases concern how a monopolist's *conduct*—not network effects in and of themselves—produced anticompetitive effects by erecting barriers to entry. *See Arcell v. Google LLC*, 2025 WL 210877, at *1 (N.D. Cal. Jan. 16, 2025) (finding that Google's default contracts "foreclosed efficient channels of distribution and **resulted** in network effects" (emphasis added)); *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 838 (11th Cir. 2015) (finding that exclusive policies with distributors foreclosed rivals' ability to enter the market); *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 931, 950 (9th Cir. 2025) (finding that Google's "efforts to frustrate users' access to and use of alternatives to" its app store foreclosed rivals' ability to compete and "unfairly enhanced" network effects in the two-sided market). There are no factual allegations that Boats Group erected any barriers to entry to unlawfully increase the network effects of its platform; instead, any network effects are due to Boats Group's investments in improving its product offering by providing a one-stop-shop for boat sellers and buyers alike. That is the very essence of competition on the merits.

### D. Boats Group's Level Up Pricing Is Not Exclusionary Conduct

Despite accusing Boats Group of "tying of its listing platforms to its ancillary products," (AC ¶¶ 103, 110, 117, 122), Brill now concedes it has not alleged a valid tying claim. Opp. 14. Instead, Brill contends that it alleges anticompetitive conduct in the form of Boats Group [redacted] *Id.* This Court already clearly rejected the same

allegations—previously phrased as "steep and sustained price increases on its customers" (Compl. ¶¶ 30, 56). Order 19 & 20 n.9 ("Courts are in near-universal agreement that charging higher prices—even excessive prices—doesn't violate the antitrust laws.").

Setting aside Brill's attempt to repackage the same faulty allegations, Brill's argument that increased prices foreclosed rivals because customers could not spend that money on other online listing services makes no economic sense. Unsurprisingly, Brill does not cite to a single case where similar allegations were sufficient to defeat a motion to dismiss. Brill points only to cases involving predatory *lower* prices designed to drive rivals out of business. *See United States v. Grinnell*, 384 U.S. 563, 576 (1966) (lowering prices in certain markets to fend off rivals); *LePage's Inc. v. 3M*, 324 F.3d 141, 154-57 (3d Cir. 2003) (bundling product discounts to underprice rivals); *N. Jackson Pharmacy, Inc. v. Express Scripts Inc.*, 345 F. Supp. 2d 1279, 1292 (N.D. Ala. 2004) (agreeing to lower prices to "bankrupt" rival pharmacies).

Brill's reliance on *Aspen Skiing* is misplaced. Opp. 15 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985)). *Aspen Skiing* identified a "limited exception" to a trader's right "to exercise his own independent discretion as to parties with whom he will deal." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408-09 (2004). It has nothing to do with Brill's novel antitrust allegations of charging customers high prices to exclude rivals. There are no allegations that Boats Group refused to deal with a rival, much less any allegations fitting within the narrow *Aspen Skiing* exception. *See id.* at 409.

**E. Brill's Threadbare Allegations Regarding Boats Group's MarineSource Litigation Fail**

Brill's attempt to allege that Boats Group's litigation against MarineSource is sufficient to state a claim under Section 2 misconstrues both its own allegations and those from the MarineSource litigation. First, Brill essentially concedes that it has not alleged anticompetitive effects. Brill *does not cite to a single allegation* about how the lawsuit against MarineSource, as opposed to the potential outcome of that litigation, has harmed competition. Opp. 11-12. Brill's conclusory statements in its Opposition that the lawsuit "forc[ed] [MarineSource] to waste capital on frivolous litigation" and "extend[ed] Boats Group's stranglehold on listings" (*id.* at 11) do not appear in the AC, and in any event fail to allege that MarineSource has been unable to attract boat-buyer or boat-seller customers as a result of the litigation.

Second, Brill's attempt to spin the litigation as Boats Group preventing brokers from listing their boats on MarineSource is the exact issue that doomed Brill's previous claims regarding Boats

Group's terms of service. Order 17 ("[t]he Terms simply don't say what Brill claims they say"). Boats Group alleges that MarineSource "deployed an automated bot" that "scraped hundreds of thousands of listings from Boats Group's platforms." Opp. 11. The fact that MarineSource argues in a legal brief that such an approach is "technically impossible" (AC ¶ 71; Opp. 11) is merely MarineSource's advocacy and does not establish that Boats Group's claims are objectively baseless. *Tuuci Worldwide, LLC v. Outer, Inc.*, 2026 WL 145455, at *7 (S.D. Fla. Jan. 20, 2026) (conclusory allegation of objective baselessness is "insufficient to survive a motion to dismiss"). Brill's contention that it "presents questions of fact that cannot be resolved on a motion to dismiss," (Opp. 12 n.4), misses the mark. *Professional Real Estate Investors* requires Brill to allege that Boats Group's lawsuit is objectively baseless as a threshold matter of law. *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). Brill's threadbare quote from MarineSource's briefing does not meet this threshold. *See id.* at 60-61.

Third, Brill has not even attempted to explain how Boats Group cannot satisfy any of its four state law counts against MarineSource, let alone all four, (*see* AC ¶¶ 71-73), and therefore the sham litigation exception does not apply. *See id.* (recognizing that the litigation must be objectively baseless); *see also Olson v. PowerBlock, Inc.*, 2022 WL 1624888, at *7 (D. Minn. May 23, 2022) ("if any one claim has objective merit [Defendant's] state-court case cannot be considered a sham") (citations omitted).

## II. THE COURT CAN, AND SHOULD, DISMISS BRILL'S TIME-BARRED CLAIMS NOW

Brill does not dispute that the statute of limitations for private antitrust claims alleging monopolization and anticompetitive mergers is four years. *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 602-03 (6th Cir. 2014). Nor does Brill address settled law that acquisition-based antitrust claims accrue when the transaction occurs and post-transaction price increases do not toll the limitations period. *See id.* at 598-604; *see also Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 269 (8th Cir. 2004) (barring § 7 claim based on acquisitions completed four years before suit). Instead, Brill argues that the statute of limitations is a "fact-intensive issue[]" unfit for resolution at the motion to dismiss stage. Opp. 16. But courts in this District have dismissed monopolization claims on limitations grounds at this stage. *See, e.g.*, *Duty Free Ams., Inc. v. Estée Lauder Cos.*, 2014 WL 1329359, at *13-15 (S.D. Fla. Mar. 31, 2014), *aff'd*, 797 F.3d 1248 (11th Cir. 2015). None of Brill's attempts to avoid the limitations bar has merit, and each acquisition-based claim is time-barred.

**A. Brill Fails to Establish that the Limitations Period Was Tolled**

Brill argues that the statute of limitations was tolled because it supposedly could not have discovered the information necessary to bring its claims until deposition testimony from a separate case was disclosed or discovery was produced by Boats Group. Opp. 18. But the case law Brill cites is inapposite. *In re Salmon* involved a price-fixing conspiracy concealed until European Commission raids, and where plaintiffs alleged defendants had falsely attributed price increases to rising costs while their own internal data disproved those justifications. 2021 WL 1109128, at *7 (S.D. Fla. Mar. 23, 2021). In *Phhhoto Inc. v. Meta Platforms, Inc.*, plaintiffs alleged affirmative concealment of algorithmic suppression of a competitor's conduct that was not publicly reported or otherwise discoverable until years after it began. 123 F.4th 592, 605-06 (2d Cir. 2024). Neither case remotely resembles Brill's allegations here. Here, by contrast, the acquisitions were undisputedly publicly announced, and Brill identifies no specific fraudulent statement by Boats Group about the acquisitions. Further, Boats Group's statements are precisely the type of general statements that the *Phhhoto* court recognized as "inactionable puffery." *Id.* at 606.

**B. The Continuing Violation Doctrine Does Not Save Brill's Claims**

Brill argues that the continuing violation doctrine saves its claims because each supposed supracompetitive price increase inflicted a new injury on it that restarted the limitations period. Opp. 16-17. That argument fails for multiple reasons.

*First*, while non-acquisition antitrust violations may independently support a continuing violations theory, the "consequences of acquisition alone"—here, the alleged price increases—"cannot constitute the continuing violations of such acquisition[s]." *Helena World Chron., LLC v. Google LLC*, 2026 WL 787882, at *17 (D.D.C. Mar. 20, 2026); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052-53 (8th Cir. 2000). Because this Court has already held that charging higher prices does not constitute anticompetitive conduct under Section 2 of the Sherman Act, the notion that raising prices is conduct that could reset the statute of limitations makes no sense.

Relatedly, Brill does not address authority explaining that it "makes no sense" to extend the continuing violation doctrine from the conspiracy context to the merger context because "a merger is a discrete act, not an ongoing scheme," and "[o]nce the merger is completed, the plan to merge is completed, and no overt acts can be undertaken to further that plan." *Midwestern Mach.*, 392 F.3d at 271; *see also Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, 2016 WL 3457177,

at *1 (C.D. Cal. May 11, 2016) ("If a merger itself violates the antitrust laws, the merger must be challenged within the limitations period."). Brill relies on inapposite cases involving different conduct. *See Imperial Point Colonnades Condo., Inc. v. Mangurian*, 549 F.2d 1029, 1033 (5th Cir. 1977) (§ 1 tying claim); *Bray v. Bank of Am. Corp.*, 784 F. App'x 738, 740 (11th Cir. 2019) (§ 1 tying claim); *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 130 (4th Cir. 2021) (§ 2 claim based on delaying generic pharmaceutical entry); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) (price-fixing conspiracy). None involves monopolization claims based on decades-old acquisitions, and none supports Brill's position.

Finally, Brill's attempt to repackage its acquisition-based claims as part of a [redacted] scheme fares no better. Opp. 17-18. Once again, the allegation mischaracterizes Boats Group's documents discussing Boats Group's strategic plan for growing its business. *See* BG0000203522 at -526 (listing [redacted]). But even if the document said what Brill claims it did (it does not), Brill does not address the case law holding that classifying acquisitions as components of an ongoing monopolization scheme does not restart the clock. Mot. 13. The continuing violation doctrine cannot save Brill's time-barred claims.

### C. The Trident Allegations Do Not Relate Back

Brill contends its Trident allegations relate back to its original Complaint, because Brill supposedly alleged monopolization through "the serial acquisitions of its main competitors." Opp. 20. It did not. The original Complaint alleged monopolization through acquisitions in the alleged market for "online marine vessel listing and marketing services." Compl. ¶ 13; Order 5-9. Trident is a loan origination company operating outside of Brill's alleged relevant market, and there are no allegations it was ever one of Boats Group's main competitors. Nothing in the original Complaint put Boats Group on notice that a claim based on the Trident acquisition would be asserted in a case about the alleged listing and marketing services market—nor did the Court consider, much less find, that Trident's services were properly alleged to be a part of that market. *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018); *see also Hunt v. Am. Bank & Tr. Co. of Baton Rouge*, 783 F.2d 1011, 1014-15 (11th Cir. 1986) (per curiam) (claims time barred where they "concern a separate incident" and "depend[] upon allegations of two transactions"); Order 6-9 (noting Brill had sufficiently alleged a relevant product market of "online marine vessel listing and marketing services" and that "[t]his market comprises digital platforms that facilitate the professional listing, promotion, and sale of recreational boats and yachts,

primarily serving licensed brokers and dealers"). The Trident acquisition is a separate transaction that does not relate back and is time-barred.

## III. BRILL STILL DOES NOT PLEAD HARM IN A TWO-SIDED MARKET

The Opposition confirms that Brill alleged a two-sided transaction platform market but refuses to accept the legal consequences of that allegation. Brill's attempt to escape *American Express* by arguing that two-sided analysis applies only to platforms that "cannot sell to one side without simultaneously selling to the other," (Opp. 14 n.5), contradicts the AC, which alleges precisely such simultaneity through interdependent network effects. AC ¶¶ 14, 24 ("simultaneously serves two distinct but interdependent groups: sellers . . . and buyers").

Even setting aside this threshold inconsistency, Brill's buyer-side harm allegations are entirely conclusory and precisely the "naked assertions devoid of further factual enhancement" that *Ashcroft v. Iqbal* holds insufficient. 556 U.S. 662, 678 (2009). Even after extensive discovery, Brill does not plead what buyers paid before versus after the challenged acquisitions, how many listings were available before versus after, any metric of buyer experience that declined, or any factual connection between the alleged conduct and buyer-side harm. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010) (requiring a "factual connection between the alleged harmful conduct and its impact on competition in the market"). Because Brill has not pled harm to competition in the market as a whole, its antitrust claims fail.

## IV. BRILL FAILS TO STATE A CLAIM UNDER FLORIDA LAW

Brill asserts that its "new allegations of anticompetitive conduct cure the deficiency identified by the Court with respect to its attempted monopolization claim." Opp. 20 n.13. As set forth above, they do not. Because Brill has not adequately alleged anticompetitive conduct or harm to competition, its attempted monopolization claim fails. *See Duty Free Ams., Inc. v. Estée Lauder Cos.*, 946 F. Supp. 2d 1321, 1338 (S.D. Fla. 2013). Because the Florida Antitrust Act is construed in accordance with the Sherman Act, Fla. Stat. § 542.32 (2025), Brill's state-law antitrust and Florida Deceptive and Unfair Trade Practices Act claims (AC ¶¶ 126, 128) fail for the same reasons. *See* Mot. 20 (citing cases). Brill's FDUTPA claim further independently fails for lack of Article III standing as it receives the benefit of the products at issue (*id.*), and its labeling of overcharges as "injury in fact" (Opp. 20) does not cure this failure to allege injury under FDUTPA.

## CONCLUSION

Boats Group respectfully requests that the Court grant its Motion with prejudice.

Dated: August 18, 2026

Respectfully submitted,

By: */s/ Sean A. Burstyn*
Sean A. Burstyn, Esq.
Florida Bar No. 1028778
**Burstyn Law PLLC**
1101 Brickell Avenue
Ste S-700
Miami, FL 33131
(305) 204-9808
Email: sean.burstyn@burstynlaw.com

Lawrence Buterman – PHV
**Latham & Watkins LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1264
Email: lawrence.buterman@lw.com

Anna M. Rathbun – PHV
Christopher J. Brown – PHV
Graham Haviland – PHV
**Latham & Watkins LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
Email: anna.rathbun@lw.com
Email: chris.brown@lw.com
Email: graham.haviland@lw.com

*Counsel for Boats Group, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 18, 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

By: */s/ Sean A. Burstyn*
Sean A. Burstyn, Esq.